1
2
3
4

**SROURIAN LAW FIRM, P.C.**
Daniel Srourian, Esq. [SBN 285678]
3435 Wilshire Blvd., Suite 1710
Los Angeles, California 90010
Telephone: 213.474.3800
Facsimile:  213.471.4160
Email: *daniel@slfla.com*

5

*Attorneys for Plaintiff and the Proposed Class*

6
7
8

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| RYAN MORALES, individually, and on behalf of all others similarly situated; <br><br> Plaintiff, <br><br> v. <br><br> CONIFER REVENUE CYCLE SOLUTIONS, LLC; <br><br> Defendant. | Case No. 2:23-cv-01987-AB-AGR <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT FOR:** <br><br> 1. **NEGLIGENCE;** <br> 2. **NEGLIGENCE *PER SE*;** <br> 3. **BREACH OF IMPLIED CONTRACT;** <br> 4. **BREACH OF CONFIDENCE;** <br> 5. **VIOLATION OF CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT;** <br> 6. **VIOLATION OF CALIFORNIA SECURITY NOTIFICATION LAWS;** <br> 7. **VIOLATION OF CALIFORNIA CONSUMER PRIVACY ACT OF 2018; AND** <br> 8. **UNFAIR BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §§17200, ET SEQ.** <br><br> **DEMAND FOR JURY TRIAL** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Ryan Morales (or "Plaintiff") brings this Class Action Complaint against Defendant Conifer Revenue Cycle Solutions, LLC ("Defendant" or "Conifer") in his individual capacity and on behalf of all others similarly situated (the "Class," defined below), and alleges, upon information and belief, as follows:

## JURISDICTION AND VENUE

1. Defendant asserts in its Notice of Removal of Class Action (ECF No. 1) that jurisdiction is proper in this Court under 28 U.S.C. § 1332(d). Specifically, Defendant asserts that "CAFA provides the Court with original jurisdiction of this action and permits Conifer to remove the State Court Action from the California state court to this Court" because (i) "Conifer estimates that information pertaining to over 120,000 California residents may have been accessed in the January 20, 2022 [Data Breach] incident"; (ii) "Plaintiff is a citizen of and domiciled in California, and Conifer is a citizen of states other than California"; and (iii) "the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." 28 U.S.C. § 1332(d), (d)(5), and § 1453(b).

## PLAINTIFF

2. Plaintiff Ryan Morales (or "Plaintiff") is and was, at all times relevant to this action, a resident of the State of California and this judicial district, and a citizen of the State of California. Plaintiff received Conifer's notice letter, addressed in his first and last name with his residential address, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," that Conifer submitted to the Attorney General of the State of California, exemplars of which are attached as **Exhibit A**, stating in part, "We are writing to inform you of a data security incident that occurred at Conifer Revenue Cycle Solutions, LLC [] and may have affected your personal information. Conifer provides revenue cycle management and other administrative services to healthcare providers, including Keck Medicine of USC," and informing them, in part, of "**What happened?** [¶] On April 14, 2022, we learned that an unauthorized third party gained access to a Microsoft Office 365-hosted business email account. Upon discovery, we immediately began an investigation and engaged a leading security firm. [¶] In the course of the investigation,

FIRST AMENDED CLASS ACTION COMPLAINT

we learned that the unauthorized party was able to access the business email account at Conifer on January 20, 2022. This email account is separate from Conifer's internal network and systems, which were not affected by this incident. Based on the investigation and a detailed review that was performed and ultimately completed on August 3, 2022, it was determined that your personal information associated with the healthcare provider listed above was in the impacted business email account. We notified your healthcare provider of this incident on August 12, 2022 and since then have worked with them to provide you this notice." Conifer's notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," that Conifer submitted to the Attorney General of the State of California, exemplars of which are attached hereto as **Exhibit A**, and sent to Plaintiff, and other persons similarly situated, further stated in part, "**What information may have been involved?** [¶] …. The personal information in the impacted business email account may have included one or more of the following elements for you: (1) information to identify you (such as full name, date of birth, and address); (2) medical and/or treatment information (such as medical record number, provider name, diagnosis or symptom information, and prescription/medication); (3) health insurance information (such as payor name and subscriber/Medicare/Medicaid number); and (4) billing and claims information. Your Social Security number, driver's license number, and financial account information were not identified in the impacted business email account." After the Data Breach on January 20, 2022 and prior to September 30, 2022, Plaintiff's personal information was confirmed to be found on dark websites. Based on the foregoing information, Plaintiff reasonable fears, believes and alleges that his unencrypted personal information, including first name and last name, in combination with his date of birth, address, medical information and medical treatment information (such as medical record number, provider name, diagnosis or symptom information, and prescription/medication), health insurance information (such as payor name and subscriber/Medicare/Medicaid number), and billing and claims information, was subject to an unauthorized "access[]" by and disclosure to "the unauthorized party" (who is not identified by Conifer and is

**FIRST AMENDED CLASS ACTION COMPLAINT**

currently unknown to Plaintiff) "on January 20, 2022," that occurred as a result of Conifer's violation of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information. Additionally, as a result of the foregoing and as further described herein, Plaintiff reasonably fears, believes and alleges that his unencrypted personal information in "a single email account," that was "accessed" by and disclosed to and actually viewed by "the unauthorized party" (who is not identified by Conifer and is currently unknown to Plaintiff) "on January 20, 2022," has subjected him to injury and/or actual damage.

## **DEFENDANT**

3.      In its Notice of Interested Parties and Corporate Disclosure Statement (ECF No. 3) filed as required by Federal Rule of Civil Procedure 7.1, Defendant Conifer Revenue Cycle Solutions, LLC ("Defendant" or "Conifer") stated that "it is a California limited liability company," (ECF No. 3), and that "Conifer is not a publicly held company but operates as a subsidiary of Tenet Healthcare Corp., a publicly held corporation." (ECF No. 3, p. 2). In its Notice of Removal of Class Action (ECF No. 1), Defendant Conifer Revenue Cycle Solutions, LLC asserted that "Conifer Health Solutions, LLC is the sole member of defendant Conifer. (Kellner Decl., ¶ 3). Conifer Health Solutions, LLC is a Delaware limited liability company with its principal place of business in Frisco, Texas. (Id., ¶ 3). Conifer Health Solutions, LLC has two members: CommonSpirit Health and Conifer Holdings, Inc. (*Id*., ¶ 4). CommonSpirit Health is a Colorado nonprofit corporation with its principal place of business in Denver, Colorado. (Id., ¶ 4). Conifer Holdings, Inc. is a Delaware corporation with its principal place of business in Frisco, Texas. (*Id*., ¶ 4)." (ECF No. 1, p. 4). On its website, it is represented that "Tenet Healthcare Corporation (NYSE: THC) is a diversified healthcare services company headquartered in Dallas."[1] In its February 9, 2023 press release, entitled "Tenet Reports Fourth Quarter and FY 2022 Results; Provides 2023 Financial Outlook," Tenet Healthcare Corporation (NYSE: THC)

---

[1] (https://investor.tenethealth.com/home/default.aspx) last viewed 10-3-2023.

announced its results for   fourth quarter 2022 versus fourth quarter 2021 by stating, *inter alia*, that net operating revenues of 19.174 billion for the twelve months ended December 31, 2022 vs. net operating revenues of 19.485 billion for the twelve months ended December 31, 2021. In its Form 10-K Annual report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the fiscal year ended December 31, 2022, Tenet Healthcare Corporation (NYSE: THC) stated "At December 31, 2022, we operated 61 acute care and specialty hospitals, as well as over 575 other healthcare facilities, including surgical hospitals, ambulatory surgery centers (each, an 'ASC'), imaging centers, off-campus emergency departments (each, an 'ED') and micro-hospitals. In addition, we operate Conifer Health Solutions, LLC ('Conifer JV'), a joint venture that provides revenue cycle management and value-based care services to hospitals, health systems, physician practices, employers and other clients. For financial reporting purposes, our business lines are classified into three separate reportable operating segments – Hospital Operations and other ('Hospital Operations'), Ambulatory Care and Conifer." In its Form 10-K Annual report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the fiscal year ended December 31, 2022, Tenet Healthcare Corporation (NYSE: THC) stated that "Conifer Holdings, Inc. (Nasdaq: CNFR) is a Michigan-domiciled insurance holding company formed in 2009," that Conifer Holdings, Inc. "activities are conducted in the United States with a concentration of activity in Michigan, Florida, Texas and California," and that Conifer Holdings, Inc. and its subsidiaries had total revenue and other income of $104.889 million in the year ended December 31, 2022. Additionally, on February 9, 2023, it was reported that "Conifer Health Solutions, a subsidiary of Dallas-based Tenet Healthcare that offers revenue cycle management services, saw net operating revenues of $326 million in the fourth quarter of 2022, according to Tenet's financial report released Feb. 9. That figure is up from $324 million over the same period last year, according to the report. Fourth-quarter 2022 net operating revenues from external clients increased 6.4 percent over the same period from 2021 because of contractual rate increases and new business expansion. For the year, Conifer saw revenues of $1.32 billion, up from $1.27 billion in 2021, according to the report. Conifer's fourth-

**FIRST AMENDED CLASS ACTION COMPLAINT**

quarter adjusted EBITDA was $90 million, down from $94 million over the same period last year. The decline was attributed to increased operating expenses. For 2022, Conifer's adjusted EBITDA was $365 million, up from $355 [million] in 2021."[2] On July 24, 2019, it was reported that "Conifer, which offers outsourced revenue cycle management and other services to healthcare providers, generated more than $1.53 billion in revenue last year, with adjusted EBITDA of $357 million, up 26% from 2017, according to [its] announcement."[3] Thus, as of January 1, 2023, Conifer had annual gross revenues in excess of twenty-five million dollars ($25,000,000) in the preceding calendar year.

4.     At all times relevant to this action, Defendant Conifer Revenue Cycle Solutions, LLC was and is a business that conducts business in California, is a "business" that "maintains personal information about a California resident" within the meaning of subdivision (b) of Cal. Civil Code § 1798.81.5, and maintains the "personal information" within the meaning of paragraph (1) of subdivision (d) of Cal. Civil Code § 1798.81.5 and subdivision (h) of section 1798.82 of Plaintiff and the Class, a "business" within the meaning of subdivision (a) of Cal. Civil Code § 1798.80, maintains Plaintiff's and the Class Members' "records" within the meaning of subdivision (b) of Cal. Civil Code § 1798.82, that contain "personal information" within the meaning of subdivision (e) of Cal. Civil Code § 1798.80.

5.     On or about September 30, 2022, Defendant Conifer Revenue Cycle Solutions, LLC caused a notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," to be submitted to the Attorney General of the State of California, exemplars of which are attached hereto as **Exhibit A**, and to be sent to "at least 120,000 California residents," stating in part, "We are writing to inform you of a data security incident that occurred at Conifer

---

[2] (https://www.beckershospitalreview.com/finance/conifers-revenues-up-in-q4-2022.html) last viewed 9-28-2023.

[3] (https://investor.tenethealth.com/home/default.aspx%20revenue%20cycle%20management%20and,up%2026%25%20from%202017%2C%20according%20to%20the%20announcement) last viewed 9-28-2023.

Revenue Cycle Solutions, LLC [] and may have affected your personal information. Conifer provides revenue cycle management and other administrative services to healthcare providers, including Keck Medicine of USC," and informing them, in part, of "**What happened?** [¶] On April 14, 2022, we learned that an unauthorized third party gained access to a Microsoft Office 365-hosted business email account. Upon discovery, we immediately began an investigation and engaged a leading security firm. [¶] In the course of the investigation, we learned that the unauthorized party was able to access the business email account at Conifer on January 20, 2022. This email account is separate from Conifer's internal network and systems, which were not affected by this incident. Based on the investigation and a detailed review that was performed and ultimately completed on August 3, 2022, it was determined that your personal information associated with the healthcare provider listed above was in the impacted business email account. We notified your healthcare provider of this incident on August 12, 2022 and since then have worked with them to provide you this notice." Conifer's notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," that Conifer submitted to the Attorney General of the State of California, exemplars of which are attached hereto as **Exhibit A**, and that Conifer sent to "at least 120,000 California residents," further stated in part, "**What information may have been involved?** [¶] …. The personal information in the impacted business email account may have included one or more of the following elements for you: (1) information to identify you (such as full name, date of birth, and address); (2) Social Security number, driver's license/state ID number, and/or financial account information; (3) medical and/or treatment information (such as medical record number, provider name, diagnosis or symptom information, and prescription/medication); (4) health insurance information (such as payor name and subscriber/Medicare/Medicaid number); and (5) billing and claims information. Please note that not all data elements were present for all individuals."

## NATURE OF THE ACTION

6.      This class action arises from the negligent failure of Conifer to properly create, maintain, preserve, and/or store confidential, personal information of Plaintiff,

and all other persons similarly situated, which allowed such unencrypted "personal information" "of at least 120,000 California residents" in "a single email account," to be "accessed" by and disclosed to "the unauthorized party" "on January 20, 2022," resulting in violations of the California Consumer Privacy Act ("CCPA"), the California Confidentiality of Medical Information Act, ("CMIA"), and the California Unfair Competition Law ("UCL"). Under the CCPA, Plaintiff, and all other persons similarly situated, have the right to expect that the confidentiality of their personal information in possession of Conifer to be reasonably preserved and protected from unauthorized access and exfiltration, theft, or disclosure. In fact, subdivision (a) of Section 1798.81.5 of the Cal. Civil Code provides, *inter alia* that, "It is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose of this section is to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information." Additionally, paragraph (1) of subdivision (a) of Section 1798.81.5 of the Cal. Civil Code provides, *inter alia* that, "any consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5, [] is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action …." Additionally, as a company "furnishing administrative services" to healthcare providers, including Keck Medicine of USC, within the definition of subdivision (a) of Cal. Civil Code section 56.26, Conifer was under a duty to protect and maintain the confidentiality of the medical information regarding California residents, under the CMIA.

7.    In his Supplemental Declaration (ECF No. 20-1), Joel Dustin Kellner testified under oath that he is the Director, Compliance and Privacy, Ethics and Compliance at Conifer, and that, "In 2022, Conifer learned that an unauthorized third party gained access to a single email account on January 20, 2022. Based on an investigation, Conifer determined that personal information of at least 120,000

**FIRST AMENDED CLASS ACTION COMPLAINT**

California residents may have been accessed by the unauthorized party. Notice of the data incident was sent to over 120,000 California residents."[4]

8.      In fact, Conifer's notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," that Conifer submitted to the Attorney General of the State of California, exemplars of which are attached hereto as **Exhibit A**, and that Conifer sent to "at least 120,000 California residents," stated in part, "We are writing to inform you of a data security incident that occurred at Conifer Revenue Cycle Solutions, LLC [] and may have affected your personal information. Conifer provides revenue cycle management and other administrative services to healthcare providers, including Keck Medicine of USC," and informing them, in part, of "**What happened?** [¶] On April 14, 2022, we learned that an unauthorized third party gained access to a Microsoft Office 365-hosted business email account. Upon discovery, we immediately began an investigation and engaged a leading security firm. [¶] In the course of the investigation, we learned that the unauthorized party was able to access the business email account at Conifer on January 20, 2022. This email account is separate from Conifer's internal network and systems, which were not affected by this incident. Based on the investigation and a detailed review that was performed and ultimately completed on August 3, 2022, it was determined that your personal information associated with the healthcare provider listed above was in the impacted business email account. We notified your healthcare provider of this incident on August 12, 2022 and since then have worked with them to provide you this notice." Conifer's notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," that Conifer submitted to the Attorney General of the State of California, exemplars of which are attached hereto as **Exhibit A**, and that Conifer sent to "at least 120,000 California residents," further stated in part, "**What information may have been involved?** [¶] …. The personal information in the impacted business email account may have included one or more of the following elements for you: (1) information to

---

[4] Hereinafter referred to as the "Data Breach."

identify you (such as full name, date of birth, and address); (2) Social Security number, driver's license/state ID number, and/or financial account information; (3) medical and/or treatment information (such as medical record number, provider name, diagnosis or symptom information, and prescription/medication); (4) health insurance information (such as payor name and subscriber/Medicare/Medicaid number); and (5) billing and claims information. Please note that not all data elements were present for all individuals."

        9.     Additionally, Conifer knew or should have known that it was negligently maintaining Plaintiff's and the Class Members' "personal information," as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5 and subdivision (h) of Cal. Civil Code section 1798.82, in "a single email account" but failed to do so. Conifer's notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," that Conifer submitted to the Attorney General of the State of California, attached hereto as **Exhibit A**, and sent to Plaintiff, and other persons similarly situated, further stated in part, "**What we are doing. [¶]** …. In response to this incident, we immediately took action to block malicious IP addresses and URLs. In addition, the password for the impacted account was reset shortly after the unauthorized access. We have enhanced and continue to enhance our security controls and monitoring practices as appropriate to minimize the risk of any similar incident in the future, and we accelerated our implementation of multi-factor authentication for business email accounts within the environment." Thus, by its "Notice of Data Breach" letter, Conifer has admitted that "enhance[ment] [of] our security controls and monitoring practices" to "to minimize the risk" of this Data Breach "incident" was necessary because Conifer had failed to "implement[] [] multi-factor authentication for [its] business email accounts."

        10.    Moreover, Conifer had the financial ability to reasonably and adequately maintain Plaintiff's and the Class Members' "personal information," as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5 and subdivision (h) of Cal. Civil Code section 1798.82, but failed to do so while shifting the burdens and costs of its wrongful conduct onto Plaintiff and the

Class. For example, on July 24, 2019, it was reported that "Conifer, which offers outsourced revenue cycle management and other services to healthcare providers, generated more than $1.53 billion in revenue last year, with adjusted EBITDA of $357 million, up 26% from 2017, according to [its] announcement."[5] Additionally, on February 9, 2023, it was reported that "Conifer Health Solutions, a subsidiary of Dallas-based Tenet Healthcare that offers revenue cycle management services, saw net operating revenues of $326 million in the fourth quarter of 2022, according to Tenet's financial report released Feb. 9. That figure is up from $324 million over the same period last year, according to the report. Fourth-quarter 2022 net operating revenues from external clients increased 6.4 percent over the same period from 2021 because of contractual rate increases and new business expansion. For the year, Conifer saw revenues of $1.32 billion, up from $1.27 billion in 2021, according to the report. Conifer's fourth-quarter adjusted EBITDA was $90 million, down from $94 million over the same period last year. The decline was attributed to increased operating expenses. For 2022, Conifer's adjusted EBITDA was $365 million, up from $355 in 2021."[6]

11.    Additionally, in his Declaration (ECF No. 4), Joel Dustin Kellner testified under oath that he is employed as the "Director, Compliance and Privacy, Ethics and Compliance at Conifer Revenue Cycle Solutions, LLC," (ECF No. 4, at ¶1), and that, "Plaintiff is asking the Court for an injunction requiring it to 'design, maintain, and test its computer systems to ensure that PII in its possession is adequately secured and protected.' And, to 'engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits' on Conifer's system. If the Court grants Plaintiff's requested injunction and Conifer is required to redesign its existing

---

[5] (https://www.healthleadersmedia.com/strategy/tenet-spin-revenue-cycle-subsidiary-conifer-healthsolutions#:~:text=Conifer%2C%20which%20offers%20outsourced%20revenue%20cycle%20management%20and,up%2026%25%20from%202017%2C%20according%20to%20the%20announcement.) last viewed 9-28-23

[6] (https://www.beckershospitalreview.com/finance/conifers-revenues-up-in-q4-2022.html) last viewed 9-28-2023.

**FIRST AMENDED CLASS ACTION COMPLAINT**

information security infrastructure, procedures, and practices, Conifer estimates that complying with such an injunction would cost in excess of $2 million." (ECF No. 4, at ¶6). Thus, by Conifer's own admission, the cost of reasonably and adequately maintaining Plaintiff's and the Class Members' "personal information," as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5 and subdivision (h) of Cal. Civil Code section 1798.82, was merely 0.0015748%, or approximately 0.16% of *net revenues for 2021* of Conifer's sole member, or merely 0.00151515%, or approximately 0.15% of Conifer's *net revenues for 2022* of Conifer's sole member.

12.    Additionally, California law requires a business to notify any California resident whose unencrypted personal information, as defined, was acquired, or reasonably believed to have been acquired, by an unauthorized person. Specifically, under subdivision (a) of Cal. Civil Code section 1798.82, "A person or business that conducts business in California, and that owns or licenses computerized data that includes personal information, shall disclose a breach of the security of the system following discovery or notification of the breach in the security of the data to a resident of California (1) whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person, or, (2) whose encrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person and the encryption key or security credential was, or is reasonably believed to have been, acquired by an unauthorized person and the person or business that owns or licenses the encrypted information has a reasonable belief that the encryption key or security credential could render that personal information readable or usable. The disclosure shall be made in the most expedient time possible and without unreasonable delay, consistent with the legitimate needs of law enforcement, as provided in subdivision (c), or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system." Under subdivision (f) of Cal. Civil Code section 1798.82, California law also requires that a sample copy of a security breach notification sent to more than 500 California residents must be submitted to the California Attorney General. Conifer caused a notice letter, dated

September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," to be submitted to the Attorney General of the State of California, attached hereto as **Exhibit A**, and sent to over 120,000 California residents. Because Conifer submitted its Notice of Data Breach form letter, attached hereto as **Exhibit A**, to the California Attorney General, Conifer, by its own investigation, has determined and conceded that Plaintiff's and the Class Members' "personal information" as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5 and subdivision (h) of Cal. Civil Code section 1798.82, including their full names, dates of birth, addresses, medical diagnosis or symptom information, and health insurance information (such as payor names and subscriber/Medicare/Medicaid numbers), was either not encrypted at all, or if it was encrypted, the encryption has been breached by the unauthorized person." Additionally, because Conifer submitted its notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," attached hereto as **Exhibit A**, to the California Attorney General and to Plaintiff and other members of the Class, Conifer has conceded that Plaintiff's and the Class Members' "personal information" as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5 and subdivision (h) of Cal. Civil Code section 1798.82, including their full names, dates of birth, addresses, medical diagnosis or symptom information, and health insurance information (such as payor names and subscriber, Medicare and/or Medicaid numbers), was in an nonencrypted and nonredacted format and thus, "the unauthorized party" was able to actually view Plaintiff's and other Class Members' "personal information" as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5 and subdivision (h) of Cal. Civil Code section 1798.82, including their full names, dates of birth, addresses, medical diagnosis or symptom information, and health insurance information (such as payor names and subscriber, Medicare and/or Medicaid numbers), As a result, Conifer was negligent for failing to encrypt or adequately encrypt Plaintiff's and other Class Members' "personal information" as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code

FIRST AMENDED CLASS ACTION COMPLAINT

section 1798.81.5 and subdivision (h) of Cal. Civil Code section 1798.82, including their full names, dates of birth, addresses, medical diagnosis or symptom information, and health insurance information (such as payor names and subscriber, Medicare and/or Medicaid numbers), that Conifer maintained in "a single email account" "on January 20, 2022."

13.   Under subdivision (a) of Cal. Civil Code section 1798.82, Conifer was required to disclose "in the most expedient time possible and without unreasonable delay" the Data Breach to the "over 120,000 California residents," whose "unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Nevertheless, Conifer waited more than 169 days (or 5 months and 16 days) *after* April 14, 2022, when it "learned" of the Data Breach on January 20, 2022, before *beginning* to inform Plaintiff and other Class Members of this Data Breach by mailing of its notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," that Conifer submitted to the Attorney General of the State of California, exemplars of which are attached hereto as **Exhibit A**, and that Conifer sent to "at least 120,000 California residents." Given the example of the Legislature finding that a delay of 21 days to be "late notice" under the statute, Conifer's delay of more than 169 days (or 5 months and 16 days) before *beginning* to mail "**Notice of Data Breach**" letter is presumptively unreasonable notice in violation of subdivision (a) of Cal. Civil Code section 1798.82.[7] Additionally, Conifer's "**Notice of Data Breach**" letter failed to state whether notification was delayed as a result of a law enforcement investigation, in violation of subparagraph (D) of paragraph (2) of subdivision (d) of Cal. Civil Code section 1798.82. Conifer's delay of more than 169 days (or 5 months and 16 days)

---

[7] Similarly, Defendant's delay of more than 60 days before *beginning* to mail "Notice of Data breach" letter is presumptively unreasonable notice under federal regulations that require HIPAA covered entities "without unreasonable delay and in no case later than 60 calendar days after discovery of the breach" to "notify each individual whose unsecured protected health information has been, or is reasonably believed by the covered entity to have been, accessed, acquired, used, or disclosed as a result of" a data breach. 45 C.F.R. § 164.404.

FIRST AMENDED CLASS ACTION COMPLAINT

providing all of the information required by subdivision (d) of Cal. Civil Code section 1798.82 and informing in the most expedient time possible and without reasonable delay as required by subdivision (a) of Cal. Civil Code section 1798.82, have prevented Plaintiff and the other members of other Class from taking steps in the most expedient time possible to protect their unencrypted personal information from unauthorized use and/or identify theft.

14.    Additionally, subparagraph (G) of paragraph (2) of subdivision (d) of Cal. Civil Code section 1798.82 also required Conifer's "**Notice of Data Breach**" letter to provide appropriate identity theft prevention and mitigation services at no cost for not less than 12 months to any person whose information was or may have been breached in the Data Breach. Nevertheless, as confirmed by Conifer's notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," sent to Plaintiff, and as confirmed by the letter, dated November 4, 2022, of Conifer's attorney of record, Rachel E. K. Lowe, Esq., Conifer failed to offer Plaintiff any identity theft prevention and mitigation services, although "Conifer believes these resources will help minimize any potential impact that may arise out of the January 2022 Incident," as confirmed by the letter, dated November 4, 2022, of Conifer's attorney of record, Rachel E. K. Lowe, Esq.

15.    As a result of the Data Breach, Plaintiff and other Class Members suffered ascertainable injury and damages in the form of the substantial and present risk of fraud and identity theft from their unlawfully accessed and compromised private and confidential information lost value of their private and confidential information, out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

16.    Personally identifying information including one or more of the following elements: (1) full name, date of birth, and address; (2) Social Security number, driver's license/state ID number, and/or financial account information; (3) medical and/or treatment information (such as medical record number, provider name, diagnosis or symptom information, and prescription/medication); (4) health insurance information (such as payor name and subscriber/Medicare/Medicaid number); and (5)

**FIRST AMENDED CLASS ACTION COMPLAINT**

billing and claims information ("PII") of Plaintiff and other Class Members was "accessed" by and disclosed to and actually viewed by "the unauthorized party" "on January 20, 2022," and compromised, and stolen due to the Data Breach.

17.    Plaintiff brings this class action lawsuit on behalf of all those similarly situated to address Defendant's inadequate safeguarding of Class Members' PII that Defendant collected and maintained. Defendant maintained the PII in a reckless manner. In particular, Defendant maintained the PII in "a single email account" on Defendant's computer network in a condition vulnerable to data breaches of this type. The California Data Breach Report 2012-2015, issued in February 2016 by California Attorney General, Kamala D. Harris, reported, "Social Security numbers and medical information – was breached [more] than other data types." Moreover, the California Attorney General further reported, "People entrust businesses and other organizations with their data on the understanding that the organizations have a both an ethical and a legal obligation to protect it from unauthorized access." As the Attorney General further reported, just because "[e]xternal adversaries cause most data breaches, [] this does not mean that organizations are solely victims; they are also stewards of the data they collect and maintain. People entrust businesses and other organizations with their data on the understanding that the organizations have a both an ethical and a legal obligation to protect it from unauthorized access. Neglecting to secure systems and data opens a gateway for attackers, who take advantage of uncontrolled vulnerabilities." Regarding encryption, the Attorney General instructed in California Data Breach Report 2012-2015, "As we have said in the past, breaches of this type are preventable." Affordable solutions are widely available: strong full-disk encryption on portable devices and desktop computers when not in use.[] Even small businesses that lack full time information security and IT staff can do this. They owe it to their patients, customers, and employees to do it now." Moreover, as reported by Society for Human Resource Management (SHRM) on November 22, 2016, "Most [security] breaches won't be committed by nefarious, unknown forces. The damage will instead come from employees. IBM's 2016 Cyber Security Intelligence Index found that 60 percent of all breaches are carried out by insiders, including current and former

**FIRST AMENDED CLASS ACTION COMPLAINT**

employees who—intentionally or unintentionally–take classified or proprietary information with them when they depart."[8]

18.    Further, it was also foreseeable and/or known to Conifer or should have been known by Conifer that negligently maintaining Plaintiff's and the Class Members' PII, within the definition of "personal information," under subparagraph (A) of paragraph (1) of subdivision (d) of section 1798.81.5 of the Cal. Civil Code and subdivision (h) of section 1798.82, in a manner that did not preserve the confidentiality of the information could have a devastating effect on them. As reported in the California Data Breach Report 2012-2015, "There are real costs to individuals. Victims of a data breach are more likely to experience fraud than the general public, according to Javelin Strategy & Research. In 2014, 67 percent of breach victims in the U.S. were also victims of fraud, compared to just 25 percent of all consumers."

19.    The mechanism of the Data Breach and potential for improper disclosure of Plaintiff's and Class Members' PII was a known and foreseeable risk to Defendant, and Defendant was on notice that failing to take steps necessary to secure the PII from those risks left the PII in a dangerous condition.

20.    Plaintiff's and Class Members' PII is now at risk because of Defendant's negligent conduct because the PII that Defendant maintained is now in the hands of data thieves.

21.    As a further result of the Data Breach, Plaintiff and Class Members have been exposed to a substantial and present risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

22.    Plaintiff and Class Members have and may also incur out of pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

23.    As a direct and proximate result of the Data Breach and subsequent Data Breach, Plaintiff and Class Members have suffered and will continue to suffer

---

[8] (https://www.shrm.org/resourcesandtools/hr-topics/technology/pages/employees-commit-most-data-breaches.aspx) last view 9-18-2023.

damages and economic losses in the form of: 1) the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges; change their usernames and passwords on their accounts; investigate, correct and resolve unauthorized debits; deal with spam messages and e-mails received subsequent to the Data Breach; and 2) charges, and fees charged against their accounts. Plaintiff and Class Members have likewise suffered and will continue to suffer an invasion of their property interest in their own personally identifying information including one or more of the following elements: (1) information to identify you (such as full name, date of birth, and address); (2) Social Security number, driver's license/state ID number, and/or financial account information; (3) medical and/or treatment information (such as medical record number, provider name, diagnosis or symptom information, and prescription/medication); (4) health insurance information (such as payor name and subscriber/Medicare/Medicaid number); and (5) billing and claims information ("PII") such that they are entitled to damages for unauthorized access to and misuse of their PII from Defendant, and Plaintiff and Class Members will suffer from future damages associated with the unauthorized use and misuse of their PII as thieves will continue to use the stolen information to obtain money and credit in their name for several years.

24.    Plaintiff seeks to remedy these harms on behalf of themselves and all similarly situated individuals whose PII was accessed and/or removed from the network during the Data Breach.

25.    Plaintiff seeks remedies including, but not limited to, compensatory damages, nominal damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant.

26.    Accordingly, Plaintiff brings this action against Defendant seeking redress for their unlawful conduct asserting claims for negligence, negligence *per se*, and breach of implied contract.

/ / /

/ / /

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### *The January 20, 2022 Data Breach*

27.     On or about September 30, 2022, Defendant began notifying users about the Data Breach.

28.     Based on Conifer's "Notice of Data Breach" letter he received, which informed Plaintiff that his PII was "accessed" by and disclosed to "the unauthorized party" "on January 20, 2022," Plaintiff believes his PII was stolen from Defendant's network and potentially subsequently sold on the dark web.

29.     Defendant had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class Members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

30.     Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches preceding the date of the breach.

31.     In 2019, a record 1,473 data breaches occurred, resulting in approximately 164,683,455 sensitive records being exposed, a 17% increase from 2018.[9]

32.     Indeed, cyber-attacks, such as the one experienced by Defendant, have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known and completely foreseeable to the public and to anyone in Defendant's industry, including Defendant.

### *Plaintiff's Exposure and Mitigation Efforts*

33.     As a direct result of the Data Breach, Plaintiff has engaged in mitigation efforts and expended time and resources. Subsequent to the Data Breach, Plaintiff now

---

[9] https://www.idtheftcenter.org/wp-content/uploads/2020/01/01.28.2020_ITRC_2019-End-of-Year-Data-Breach-Report_FINAL_Highres-Appendix.pdf (last accessed 12-10-2020).

**FIRST AMENDED CLASS ACTION COMPLAINT**

regularly checks his credit reports as well as his banking statements and credit card statements several times a week. This is time Plaintiff otherwise would have spent performing other activities, such as his working or leisure activities.

34.    Knowing that thieves stole his PII and knowing that this information may now, or in the future, be available for sale on the dark web has caused Plaintiff to be very concerned about identity theft.

35.    Prior to receiving Conifer's "Notice of Data Breach" letter, Plaintiff had not received a "Notice of Data Breach" letter from any other company.

36.    Plaintiff suffered actual injury from having his PII exposed as a result of the Data Breach including, but not limited to: (a) entrusting his PII to Defendant's customers which he would not have, had Defendant disclosed to Plaintiff upon receipt of Plaintiff's PII that it lacked data security practices adequate to safeguard his PII from unauthorized disclosure; (b) damages to and diminution in the value of his PII— a form of intangible property that Plaintiff entrusted to Defendant; (d) loss of his privacy; (e) present injury arising from the increased risk of fraud and identity theft; and (f) the time and expense of his mitigation efforts as a result of the Data Breach.

37.    As a result of the Data Breach, Plaintiff will continue to be at heightened risk for financial fraud and identity theft, and the attendant damages, for years to come.

### Defendant's Failure to Comply with FTC Guidelines

38.    The Federal Trade Commission ("FTC") promulgates numerous guides for businesses highlighting the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[10]

39.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for

---

[10] Federal Trade Commission, *Start With Security*, (https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf) last viewed 9-9-2021.

**FIRST AMENDED CLASS ACTION COMPLAINT**

businesses.[11] The guidelines note that businesses should protect the personal customer information they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

40.    The FTC further recommends companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry–tested methods for security; monitor for suspicious activity on the network; and verify third–party service providers have implemented reasonable security measures.[12]

41.    The FTC brings enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

42.    Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to members' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

43.    Defendant was at all times fully aware of its obligation to protect Plaintiff and Class Members' PII. Defendant was also aware of the significant repercussions that would result from its failure to do so.

/ / /

/ / /

/ / /

---

[11] Federal Trade Commission, *Protecting Personal Information: A Guide for Business*, (https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal- information.pdf) last viewed 9-9-2021.

[12] FTC, *Start With Security*, *supra.*

### *Defendant's Failure to Comply with Industry Standards*

44.     A number of industry and national best practices have been published and should have been used as a go-to resource and authoritative guide when developing Defendant's cybersecurity practices.

45.     Best cybersecurity practices that are standard in the industry providing "administrative services to healthcare providers," include implementation of multi-factor authentication for business email accounts; engaging independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audit; installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

46.     Upon information and belief, Defendant failed to meet the minimum standards of the following cybersecurity frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC- 4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT- 3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established standards in reasonable cybersecurity readiness.

47.     These foregoing frameworks are existing and applicable industry standards in Defendant's industry, and Defendant failed to comply with these accepted standards, thereby causing the Data Breach.

### *Defendant's Breach of Duty of Care and Implied Contract*

48.     Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard PII on its computer systems and networks. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

**FIRST AMENDED CLASS ACTION COMPLAINT**

a.  Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b.  Failing to adequately protect PII of current and former customers;

c.  Failing to adequately protect current and former customers' PII by implementation of multi-factor authentication for business email accounts;

d.  Failing to adequately protect current and former customers' PII by engaging independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audit;

e.  Failing to properly monitor its own data security systems for existing intrusions, brute-force attempts, and clearing of event logs;

f.  Failing to apply all available security updates;

g.  Failing to install the latest software patches, update its firewalls, check user account privileges, or ensure proper security practices;

h.  Failing to practice the principle of least-privilege and maintain credential hygiene;

i.  Failing to avoid the use of domain-wide, administrator-level service accounts;

j.  Failing to employ or enforce the use of strong randomized, just-in- time local administrator passwords; and

k.  Failing to properly train and supervise employees in the proper handling of inbound emails.

49.    As the result of computer systems in need of security upgrading and inadequate procedures for handling cybersecurity threats, Defendant negligently and unlawfully failed to safeguard Plaintiff and Class Members' PII.

/ / /

/ / /

/ / /

/ / /

**FIRST AMENDED CLASS ACTION COMPLAINT**

*Data Breaches Put Victims at a Present Increased Risk of*
*Fraud and Identity Theft*

50.    Defendant understood the PII it maintained is highly sensitive, and of significant value to those who would use it for wrongful purposes, such as the cyber-criminals who perpetrated this Data Breach.

51.    The United States Government Accountability Office released a report in 2007 regarding data breaches (the "GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[13]

52.    The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[14] Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

53.    Identity thieves can also use Social Security numbers to obtain a driver license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information.

54.    In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

---

[13] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," p. 2, U.S. Government Accountability Office, June 2007, (https://www.gao.gov/new.items/d07737.pdf) (the "GAO Report") last viewed 4-12-2019.

[14] *See* (https://www.identitytheft.gov/Steps) last viewed 12-8-2020.

FIRST AMENDED CLASS ACTION COMPLAINT

55.     A study by Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal and financial information.[15]

56.     The value of personal data is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that PII has considerable market value.

57.     It must also be noted there may be a substantial time lag—measured in years—between when harm occurs versus when it is discovered, and also between when PII and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

58.     [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm. *See* GAO Report at 29.

59.     PII is such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

60.     Indeed, a robust "cyber black market" exists in which criminals openly post stolen PII on multiple underground or dark Internet websites. In fact, after the Data Breach on January 20, 2022 and prior to September 30, 2022, Plaintiff's personal information was confirmed to be found on dark websites, meaning Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

---

[15] *See* Jason Steele, *Credit Card and ID Theft Statistics*, CreditCards.com (Oct. 23, 2020) (https://w ww.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.php) last viewed 12-10-2020.

61.    Thus, Plaintiff and Class Members must vigilantly monitor their financial accounts for many years to come.

62.    Sensitive information can sell for as much as $363 according to the Infosec Institute. PII is particularly valuable because criminals can use it to target victims with frauds and scams. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

63.    The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200.

64.    Social Security numbers are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud.

65.    For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines. Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity. Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

66.    Moreover, it is not an easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the

FIRST AMENDED CLASS ACTION COMPLAINT

new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[16]

67.    This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[17]

68.    At all relevant times, Defendant knew or reasonably should have known these risks, the importance of safeguarding PII, and the foreseeable consequences if its data security systems were breached and strengthened their data systems accordingly. Defendant was put on notice of the substantial and foreseeable risk of harm from a data breach, yet they failed to properly prepare for that risk.

### Plaintiff's and Class Members' Damages

69.    The ramifications of Defendant's failure to keep Plaintiff's and Class Members' PII secure are long lasting and severe. Once that kind of information is stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[18]

70.    The PII belonging to Plaintiff and Class Members is private, sensitive in nature, and left inadequately protected by Defendant—who did not obtain Plaintiff's or Class Members' consent to disclose such information to any other person as required by applicable law and industry standards.

---

[16] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR, Feb. 9, 2015, (http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has- millions-worrying-about-identity-theft) last viewed 10-28-2020.

[17] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, Feb. 6, 2015, (http://www.itworld.com/ article/2880960/anthem-hack- personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html) last viewed 10-28-2020.

[18] *2014 LexisNexis True Cost of Fraud Study,* (https://www.lexisnexis. com/risk/downloads/assets/true-cost-fraud-2014.pdf) last viewed 9-9-2021.

71.    The Data Breach was a direct and proximate result of Defendant's failure to: (a) properly safeguard and protect Plaintiff's and Class Members' PII from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and common law; (b) establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and Class Members' PII; and (c) protect against reasonably foreseeable threats to the security or integrity of such information.

72.    Defendant had the resources necessary to prevent the Data Breach, but neglected to adequately implement data security measures, despite its obligation to protect member data.

73.    Defendant could have prevented the intrusions into its systems and, ultimately, the theft of PII if Defendant had remedied the deficiencies in its data security systems and adopted security measures recommended by experts in the field.

74.    As a direct and proximate result of Defendant's wrongful actions and inactions, Plaintiff and Class Members are now in imminent, immediate, and continuing increased risk of harm from identity theft and fraud, requiring them to dedicate time and resources which they otherwise would have dedicated to other life demands, such as work and family, to mitigate the actual and potential impact of the Data Breach on their lives.

75.    The U.S. Department of Justice's Bureau of Justice Statistics found that "among victims who had PII or PHI used for fraudulent purposes, 29% spent a month or more resolving problems," and that "resolving the problems caused by identity theft [could] take more than a year for some victims."[19]

76.    In the breach notification letter, Defendant did not much as even make an offer of complementary identity monitoring services to its employees. Victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft, medical and financial fraud, and Defendant's fail to provide sufficient

---

[19] U.S. Department of Justice, Office of Justice Programs Bureau of Justice Statistics, *Victims of Identity Theft, 2012*, December 2013, (https://www.bjs.gov/content/pub/pdf/vit12.pdf) last viewed 9-9-2021.

compensation for the unauthorized release and disclosure of Plaintiff and Class Members' PII.

77.    As a direct result of Defendant's failures to prevent the Data Breach, Plaintiff and Class Members have suffered, will suffer, and are at increased risk of suffering:

      a.  The compromise, publication, theft and/or unauthorized use of their PII;

      b.  Out–of–pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

      c.  Lost opportunity costs and lost wages associated with efforts expended and loss of productivity from addressing and attempting to mitigate actual and future consequences of the Data Breach, including but not limited to researching how to prevent, detect, contest, and recover from identity theft and fraud;

      d.  The present and continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake appropriate measures to protect the PII in its possession; and

      e.  Current and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, remediate, and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

78.    In addition to a remedy for the economic harm, Plaintiff and Class Members maintain an undeniable interest in ensuring their PII is secure, remains secure, and is not subject to further misappropriation and theft.

79.    As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

## CLASS ACTION ALLEGATIONS

80.    Plaintiff brings this suit on behalf of himself and the Class of similarly situated individuals that are preliminarily defined as:

All persons to whom Conifer sent a letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," exemplars of which are attached hereto as **Exhibit A**.

81.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, members, officers and directors, and any entity in which Defendant has a controlling interest and any entity in has a controlling interest in Defendant; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; Class counsel; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

82.    Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

83.    **Numerosity:** The Class is so numerous that joinder of all members is impracticable. Defendant has identified more than 100 persons whose PII may have been improperly accessed in the Data Breach, and the Class is identifiable within Defendant's records. A precise number of class members can be ascertained through appropriate discovery and from records maintained by Defendant.

84.    **Commonality and Predominance:** Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class members. These include but are not limited to, the following:

      a.    Whether Plaintiff's and the Class members' PII was accessed and/or viewed by one or more unauthorized persons in the Data Breach alleged above;

      b.    Whether Defendant's disclosing Plaintiff's and Class members' PII to unauthorized persons was permissible without the prior written authorization of the Plaintiff or the Class members;

c. When and how Defendant should have learned and actually learned of the Data Breach;

d. Whether Defendant's response to the Data Breach was adequate;

e. Whether Defendant owed a duty to the Class to exercise due care in collecting, storing, safeguarding and/or obtaining their PII;

f. Whether Defendant breached that duty;

g. Whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of storing Plaintiff's and Class members' PII;

h. Whether Defendant acted negligently in connection with the monitoring and/or protecting of Plaintiff's and Class members' PII;

i. Whether Defendant knew or should have known that they did not employ reasonable measures to keep Plaintiff's and Class members' PII secure and prevent loss or misuse of that PII;

j. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

k. Whether Defendant caused Plaintiff and Class members damages;

l. Whether Defendant violated the law by failing to promptly notify Plaintiff and Class members that their PII was compromised;

m. Whether Plaintiff and Class members are entitled to actual damages, nominal and/or statutory damages, credit monitoring, other monetary relief, and/or equitable relief; and

n. Whether Defendant violated the California Unfair Competition Law (Business & Professions Code § 17200 *et seq*.).

85. There are no defenses of a unique nature that may be asserted against the Plaintiff individually, as distinguished from the other Class Members, and the relief sought is common to the Class.

86. **Typicality:** Plaintiff's claims are typical of those of other Class Members because all had their PII compromised because of the Data Breach, due to Defendant's identical conduct.

87.    **Adequacy of Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff's interests are aligned with the class. Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiff seeks no relief that is adverse to Class Members. In addition, Plaintiff retained counsel experienced in data breach and complex consumer class action litigation. Neither Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this claim.

88.    **Superiority:** Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large entities, such as Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

89.    The nature of this action and the nature of laws available to Plaintiff and the members of Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class for the claims alleged and the disposition of whose claims in a class action will provide substantial benefits to both the parties and the Court because:

a)    If each member of the Class were required to file an individual lawsuit, Conifer would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual member of the Class with its vastly superior financial and legal resources;

b)    The costs of individual suits could unreasonably consume the amounts that would be recovered;

**FIRST AMENDED CLASS ACTION COMPLAINT**

c)      Proof of a common business practice or factual pattern which Plaintiff experienced is representative of that experienced by the Class and will establish the right of each of the members to recover on the causes of action alleged;

d)      Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation;

e)      Conifer has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making it appropriate to render judgment with respect to the Class as a whole in this litigation; and

f)      The disposition of the claims of the members of Class through this class action will produce salutary by-products, including a therapeutic effect upon those who indulge in unlawful practices, and aid to legitimate business enterprises by curtailing unlawful competition.

90.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, and a risk that any adjudications with respect to individual members of the Class would, as a practical matter, either be dispositive of the interests of other members of the Class not party to the adjudication or substantially impair or impede their ability to protect their interests.

91.     Class certification is also warranted for purposes of injunctive and declaratory relief because Defendant has acted, or refused to act, on grounds generally applicable to the class, so that final injunctive and declaratory relief are appropriate with respect to the Class as a whole.

## CLAIMS FOR RELIEF
### First Claim for Relief
### Negligence
### (On Behalf of Plaintiff and the Class)

92.     Plaintiff re-alleges and incorporates by reference the Paragraphs above as if fully set forth herein.

93.    Defendant breached its duty to implement reasonable security procedures and practices appropriate to the nature of the PII to protect the PII of Plaintiff and Class Members from unauthorized or illegal access, destruction, use, modification, or disclosure in accordance with Cal. Civil Code sections 1798.81.5 and 56.26 in numerous ways, including but not limited to, by failing to implement adequate and reasonable security controls and user authorization and authentication processes, by failing to implement multi-factor authentication for business email accounts, by failing to limit the types of data permitted to be transferred, by failing to encrypt Plaintiff's and the Class Members' PII, within the definition of "personal information" under "personal information" as defined by subparagraph (A) of paragraph (1) of subdivision (d) of section 1798.81.5 of the Cal. Civil Code and subdivision (h) of section 1798.82, by maintaining Plaintiff's and the Class Members' PII, within the definition of "personal information" under subparagraph (A) of paragraph (1) of subdivision (d) of section 1798.81.5 of the Cal. Civil Code and subdivision (h) of section 1798.82, for longer than is reasonably necessary, and by failing to properly and adequately educate and train its employees.

94.    Defendant's own negligent conduct created a foreseeable risk of harm to Plaintiff and Class Members. Defendant's negligence included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's negligence also included its decision not to comply with (1) industry standards, and/or best practices for the safekeeping and encrypted authorized disclosure of the PII of Plaintiff and Class Members; or (2) Section 5 of the FTC Act.

95.    First, Defendant had a duty to exercise reasonable care in safeguarding, securing and protecting such PII from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining and testing its security protocols to ensure PII in Defendant's possession was adequately secured and protected, and that employees tasked with maintaining such information were adequately trained on relevant cybersecurity

measures. Defendant also had a duty to put proper procedures in place to prevent the unauthorized dissemination of Plaintiff and Class Members' PII.

96.     As a condition of receiving medical services from Keck Medicine of USC, Plaintiff and Class Members were obligated to provide Defendant with their PII. Specifically, at all relevant times, "Conifer provide[d] revenue cycle management and other administrative services to healthcare providers, including Keck Medicine of USC," as confirmed in Conifer's notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," exemplars of which are attached hereto as **Exhibit A**. Plaintiff and Class Members provided their PII to Keck Medicine of USC in exchange for products/services, along with Keck Medicine of USC's promise to protect their PII from unauthorized disclosure as set forth in Keck Medicine of USC's Notice of Privacy Practices, effective as of and since November 15, 2019, which was required to be signed by every patient and/or patient's guardian as a condition of receiving healthcare products/services. Such Notice of Privacy Practices stated, *inter alia*, "By law, the University of Southern California (USC)[20] must protect the privacy of your identifiable medical and other health information ('health information')"; "As a general rule, you must give written permission before USC can use or release your health information."; and additionally, "We may use and disclose your health

---

[20] Keck Medicine of USC's Notice of Privacy Practices, effective as of and since November 15, 2019, stated: "For purposes of the HIPAA Privacy Rule, USC includes those entities that comprise Keck Medicine of USC, including but not limited to, USC Norris Cancer Hospital, Keck Hospital of USC, USC's employed physicians, nurses and other clinical personnel, those units of USC that provide clinical services within the Keck School of Medicine, School of Pharmacy, the Herman Ostrow School of Dentistry, Physical and occupational Therapy, Suzanne Dworak-Peck School of Social Work, as well as USC Care Medical Group, affiliated medical foundations of Keck and their physicians, nurses and clinical personnel, Engemann Student Health Center, Eric Cohen Student health Center, USC Verdugo Hills Hospital, its nurses and other clinical personnel, Verdugo Radiology Medical Group, Verdugo Hills Anesthesia, and Chandnish K. Ahluwalia, M.D., Inc. and those units that support clinical and clinical research functions, including the Offices of the General Counsel, Audit and Compliance."

information for our health care operations, such as internal administration and planning that improve the quality and cost effectiveness of the care we provide you. .... We may also disclose your health information to third parties to assist us in these activities (but only if they agree in writing to maintain the confidentiality of your health information)." As such, Plaintiff and the Class Members entrusted their PII to Defendant with the understanding Defendant would safeguard their information.

97.    Defendant was in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach. However, Plaintiff and Class Members had no ability to protect their PII in Defendant's possession.

98.    Defendant had full knowledge of the sensitivity of the PII, and the types of harm Plaintiff and Class Members could, would, and will suffer if the information were wrongfully disclosed.

99.    As confirmed in Conifer's notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," exemplars of which are attached hereto as **Exhibit A**, Defendant admitted that its computer system containing Plaintiff's and Class Members' PII was wrongfully accessed by and disclosed to an unauthorized third party.  Upon information and belief, the Data Breach occurred due to Defendant's actions and/or omissions.

100.   Defendant knew, or should have known, that its network computer systems and data security practices were inadequate to protect the PII of Plaintiff and Class Members from unauthorized or illegal access, acquisition, use, or disclosure in accordance with Cal. Civil Code sections 1798.81.5 and 56.26 in a nonencrypted and a nonredacted format, prior to and on January 20, 2022, from unauthorized access and exfiltration, theft, or disclosure, and that such risk of unauthorized access and exfiltration, theft, or disclosure was more likely than not.

101.   Plaintiff and Class Members were the foreseeable and probable victims of Defendant's negligent and inadequate security practices and procedures that led to the Data Breach. Defendant knew or should have known of the inherent risks in collecting and storing the highly valuable PII of Plaintiff and Class Members, the critical importance of providing adequate security of that information, the current

cyber security risks being perpetrated, and that Defendant had inadequate employee training, monitoring and education and IT security protocols in place to secure the PII of Plaintiff and Class Members.

102.   Defendant negligently, through its actions and/or omissions, and unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' PII while the information was within Defendant's possession and/or control by failing to comply with and/or deviating from standard industry rules, regulations, and practices at the time of the Data Breach.

103.   Second, Defendant's violations of Section 5 of the FTC Act constitute negligence. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

104.   Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and Class members' PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it required, obtained, and stored, and the foreseeable consequences of a data breach including, specifically, the damages that would result to Plaintiff and Class members.

105.   Plaintiff and Class Members are within the class of persons the FTC Act was intended to protect.

106.   The harm the Data Breach caused, and continues to cause, is the type of harm the FTC Act was intended to guard against. The FTC pursues enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members.

107.   Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place

to detect and prevent unauthorized dissemination of Plaintiff's and Class Members' PII.

108.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately disclose to Plaintiff and Class Members the existence and scope of the Data Breach.

109.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class Members, Plaintiff's and Class Members' PII would not have been compromised.

110.    There is a temporal and close causal connection between Defendant's failure to implement security measures to protect the PII and the harm suffered, and/or risk of present and continual harm suffered, by Plaintiff and Class Members.

111.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered, and continue to suffer, injuries and damages arising from the Data Breach, including, but not limited to: damages from lost time and efforts to mitigate the actual and potential impact of the Data Breach on their lives, including, *inter alia*, by contacting their financial institutions, closely reviewing and monitoring their credit reports and various accounts for unauthorized activity, filing police reports, and damages from identity theft, which may take months—if not years— to discover, detect, and remedy.

112.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered, and will continue to suffer, the continued risks of exposure of their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

**Second Claim for Relief**
**Negligence *Per Se***
**(On Behalf of Plaintiff and the Class)**

113.    Plaintiff re-alleges and incorporates by reference the Paragraphs above as if fully set forth herein.

114.   Pursuant to Section 5 of the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

115.   Plaintiff and Class Members are within the class of persons that the FTC Act was intended to protect.

116.   The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members.

117.   Defendant breached its duties to Plaintiff and Class Members under the Federal Trade Commission Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

118.   Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se.*

119.   But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

120.   The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet their duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their PII.

121.   As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

/ / /

/ / /

/ / /

FIRST AMENDED CLASS ACTION COMPLAINT

### Third Claim for Relief
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Class)

122.    Plaintiff re-alleges and incorporates by reference the Paragraphs above as if fully set forth herein.

123.    Plaintiff and Class Members were required to provide their PII to Defendant as a condition of receiving medical services from Keck Medicine of USC.

124.    Plaintiff and Class Members provided their PII to Keck Medicine of USC in exchange for products/services, along with Keck Medicine of USC's promise to protect their PII from unauthorized disclosure as set forth in Keck Medicine of USC's Notice of Privacy Practices, effective as of and since November 15, 2019, which was required to be signed by every patient and/or patient's guardian as a condition of receiving healthcare products/services. Such Notice of Privacy Practices stated, *inter alia*, "By law, the University of Southern California (USC)[21] must protect the privacy of your identifiable medical and other health information ('health information')"; "As a general rule, you must give written permission before USC can use or release your health information."; and additionally, "We may use and disclose your health information for our health care operations, such as internal administration and planning that improve the quality and cost effectiveness of the care we provide you. .... We may also disclose your health information to third parties to assist us in these

_____

[21] Keck Medicine of USC's Notice of Privacy Practices, effective as of and since November 15, 2019, stated: "For purposes of the HIPAA Privacy Rule, USC includes those entities that comprise Keck Medicine of USC, including but not limited to, USC Norris Cancer Hospital, Keck Hospital of USC, USC's employed physicians, nurses and other clinical personnel, those units of USC that provide clinical services within the Keck School of Medicine, School of Pharmacy, the Herman Ostrow School of Dentistry, Physical and occupational Therapy, Suzanne Dworak-Peck School of Social Work, as well as USC Care Medical Group, affiliated medical foundations of Keck and their physicians, nurses and clinical personnel, Engemann Student Health Center, Eric Cohen Student health Center, USC Verdugo Hills Hospital, its nurses and other clinical personnel, Verdugo Radiology Medical Group, Verdugo Hills Anesthesia, and Chandnish K. Ahluwalia, M.D., Inc. and those units that support clinical and clinical research functions, including the Offices of the General Counsel, Audit and Compliance."

activities (but only if they agree in writing to maintain the confidentiality of your health information)."

125. Upon information and belief, Conifer, in its agreement to provide "revenue cycle management and other administrative services to healthcare providers, including Keck Medicine of USC," (as confirmed in Conifer's notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," exemplars of which are attached hereto as **Exhibit A**), and in its own written privacy policies, Conifer expressly promised in writing to maintain the confidentiality of the PII of Plaintiff and Class Members and that Conifer would only disclose such PII under certain circumstances, none of which relate to the Data Breach.

126. Upon information and belief, implicit in the agreement to provide "revenue cycle management and other administrative services to healthcare providers, including Keck Medicine of USC," (as confirmed in Conifer's notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," exemplars of which are attached hereto as **Exhibit A**), was an implied agreement between Plaintiff and Class Members on the one hand, and Defendant on the other, regarding the PII of Plaintiff and Class Members, that it was Defendant's obligation to: (a) use such PII for business purposes only; (b) take reasonable steps to safeguard that PII; (c) prevent unauthorized disclosures of the PII; (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII; (e) reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure or uses; and (f) retain and maintain the PII only under conditions that kept such information secure and confidential and for no longer than is reasonably necessary for such business purposes.

127. Without such implied contract, Plaintiff and other Class Members would not have sought medical services from Keck Medicine of USC and would not have provided their PII to Keck Medicine of USC, who provided it to Defendant; and Keck Medicine of USC would not have provided the PII of Plaintiff and the Class to

Defendant, because it would have violated its agreement with Conifer to provide "revenue cycle management and other administrative services to … Keck Medicine of USC," (as confirmed in Conifer's notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," exemplars of which are attached hereto as **Exhibit A**).

128.   Plaintiff and Class Members fully performed their obligations under the implied contract with Defendant. However, Defendant did not.

129.   Defendant breached the implied contract with Plaintiff and Class members by failing to reasonably safeguard and protect Plaintiff's and Class Members' PII, which was compromised as a result of the Data Breach.

130.   As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and other Class Members have suffered, and continue to suffer, injuries and pecuniary damages arising from the Data Breach including, but not limited to: damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives, including, *inter alia*, by contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and various accounts for unauthorized activity, filing police reports, and damages from identity theft, which may take months if not years to discover, detect, and remedy.

**Fourth Claim for Relief**
**Breach of Confidence**
**(On Behalf of Plaintiff and the Class)**

131.   Plaintiff re-alleges and incorporates by reference the Paragraphs above as if fully set forth herein.

132.   At all relevant times, Defendant was fully aware of the confidential and sensitive nature of Plaintiff's and Class Members' PII maintained by Defendant.

133.   As alleged herein and above, Defendant's relationship with Plaintiff and Class Members was governed by statute requiring that Plaintiff's and Class Members' PII would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

**FIRST AMENDED CLASS ACTION COMPLAINT**

134. Defendant maintained Plaintiff's and Class Members' respective PII with the explicit and implicit understandings that Defendant would protect and not permit the information to be disseminated to any unauthorized parties.

135. Defendant maintained Plaintiff's and Class Members' respective PII with the explicit and implicit understandings that Defendant would take precautions to protect that PII from unauthorized disclosure, such as following basic principles of protecting its computer networks and data systems.

136. Defendant acquired and voluntarily received, in confidence, Plaintiff's and Class Members' PII with the understanding that the information would not be disclosed or disseminated to the public or any unauthorized third parties.

137. Due to Defendant's failure to prevent, detect, and avoid the Data Breach from occurring by, *inter alia*, following best information security practices to secure Plaintiff's and Class Members' PII, Plaintiff's and Class Members' PII was accessed by, disclosed to, and/or misappropriated by, at least one unauthorized third party beyond Plaintiff's and Class Members' confidence, and without their express permission.

138. As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiff and Class Members have suffered, and will continue to suffer damages.

139. But for Defendant's disclosure of Plaintiff's and Class Members' PII in violation of the parties' understanding of confidence, Plaintiff's and Class Members' PII would not have been compromised, stolen, viewed, accessed, and/or used by unauthorized third parties. Defendant's Data Breach was the direct and legal cause of the theft of Plaintiff's and Class Members' PII, as well as the resulting damages.

140. The injury and harm Plaintiff and Class Members suffered, and continue to suffer, was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff's and Class Members' PII. Defendant knew its computer systems and technologies for accepting and securing Plaintiff's and Class Members' PII had numerous security and other vulnerabilities placing Plaintiff's and Class Members' PII in jeopardy.

FIRST AMENDED CLASS ACTION COMPLAINT

141.    As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (a) the compromise, publication, and/or theft of their PII; (b) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII; (c) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (d) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession; (e) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (f) the diminished value of Defendant's services they received.

142.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non–economic losses.

**Fifth Claim for Relief**
**Violation of the Confidentiality of Medical Information Act**
**California Civil Code §§ 56, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

143.    Plaintiff re-alleges and incorporates by reference the Paragraphs above as if fully set forth herein.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**FIRST AMENDED CLASS ACTION COMPLAINT**

144.     At all times relevant to this action, Conifer provided "revenue cycle management and other administrative services to healthcare providers, including Keck Medicine of USC," and received and maintained, and continues to maintain, "medical information,"[22] within the meaning of subdivision (i) of Cal. Civil Code section 56.05

---

[22] "Medical information" is defined under the CMIA at subdivision (i) of Cal. Civil Code section 56.05, as any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental health application information, mental or physical condition, or treatment. "Individually identifiable" means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the identity of the individual.  Conifer's notice letter that Plaintiff received indicates that, "The personal information in the impacted business email account may have included one or more of the following elements for you: (1) information to identify you (such as full name, date of birth, and address); (2) medical and/or treatment information (such as medical record number, provider name, diagnosis or symptom information, and prescription/medication); (3) health insurance information (such as payor name and subscriber/Medicare/Medicaid number); and (4) billing and claims information. Your Social Security number, driver's license number, and financial account information were not identified in the impacted business email account," and does not deny that Plaintiff's "medical and/or treatment information (such as medical record number, provider name, diagnosis or symptom information, and prescription/medication)," within the definition of "medical information" at subdivision (i) of Cal. Civil Code section 56.05 because "treatment information," "diagnosis or symptom information," and "prescription/medication" information all fall within the definition of "medical information," and Conifer's notice letter that Plaintiff received does not affirmatively deny that Plaintiff's "medical and/or treatment information (such as medical record number, provider name, diagnosis or symptom information, and prescription/medication)," was "not identified in the impacted business email account," i.e. disclosed or released in the Data Breach. Furthermore, "medical and/or treatment information," "health insurance information" and "billing and claims information" described in the Conifer's notice letter that Plaintiff received all fall within the definition of "personal information," under paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5, and cannot be read to be excluded under subdivision (e) of Cal. Civil Code section

---

**FIRST AMENDED CLASS ACTION COMPLAINT**

of the California Confidentiality of Medical Information Act, Cal. Civil Code sections 56, *et seq.* (the "CMIA") of Plaintiff and Class Members who are "patients," within the meaning of subdivision (l) of Cal. Civil Code section 56.05, of "healthcare providers, including Keck Medicine of USC," (as confirmed in Conifer's notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," exemplars of which are attached hereto as **Exhibit A**).

145.    As a company "furnishing administrative services" to healthcare providers, including Keck Medicine of USC, within the definition of subdivision (a) of Cal. Civil Code section 56.26, Conifer was under a duty to protect and maintain the confidentiality of the medical information regarding a patient, and to ensure that medical information regarding Plaintiff and Class is not disclosed or disseminated or released without Plaintiff's and Class Members' authorization.[23]

---

1798.81.5 because Conifer's notice letter, exemplars of which are attached hereto as **Exhibit A**, Conifer's filings in this action, and Conifer's parent company's and owner's filings made pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, do not affirmatively state that Conifer was at all relevant times or is a provider of health care, health care service plan, or contractor regulated by the Confidentiality of Medical Information Act (Part 2.6 (commencing with Section 56) of Division 1) or a covered entity governed by the medical privacy and security rules issued by the federal Department of Health and Human Services, Parts 160 and 164 of Title 45 of the Code of Federal Regulations, established pursuant to the Health Insurance Portability and Availability Act of 1996 (HIPAA).

[23] An "authorization" is defined under the CMIA as obtaining permission in accordance with Civil Code section 56.26.  Under Civil Code sections 56.11 and 56.21, an authorization for the release of medical information is valid only if it:
(a) Is handwritten by the person who signs it or is in a typeface no smaller than 14-point type.
(b) Is clearly separate from any other language present on the same page and is executed by a signature which serves no other purpose than to execute the authorization.
(c) Is signed and dated by one of the following:
(1) The patient. A patient who is a minor may only sign an authorization for the release of medical information obtained by a provider of health care, health care

**FIRST AMENDED CLASS ACTION COMPLAINT**

146.    Notwithstanding its duties under Cal. Civil Code section 56.26 of the CMIA, on or about September 30, 2022, Conifer caused a notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," to be submitted to the Attorney General of the State of California, exemplars of which are attached hereto as **Exhibit A**, and to be sent to "at least 120,000 California residents," stating in part, "We are writing to inform you of a data security incident that occurred at Conifer Revenue Cycle Solutions, LLC [] and may have affected your personal information. Conifer provides revenue cycle

---

service plan, pharmaceutical company, or contractor in the course of furnishing services to which the minor could lawfully have consented under Part 1 (commencing with Section 25) or Part 2.7 (commencing with Section 60).

(2) The legal representative of the patient, if the patient is a minor or an incompetent. However, authorization may not be given under this subdivision for the disclosure of medical information obtained by the provider of health care, health care service plan, pharmaceutical company, or contractor in the course of furnishing services to which a minor patient could lawfully have consented under Part 1 (commencing with Section 25) or Part 2.7 (commencing with Section 60).

(3) The spouse of the patient or the person financially responsible for the patient, where the medical information is being sought for the sole purpose of processing an application for health insurance or for enrollment in a nonprofit hospital plan, a health care service plan, or an employee benefit plan, and where the patient is to be an enrolled spouse or dependent under the policy or plan.

(4) The beneficiary or personal representative of a deceased patient.

(d) States the specific uses and limitations on the types of medical information to be disclosed.

(e) States the name or functions of the provider of health care, health care service plan, pharmaceutical company, or contractor that may disclose the medical information.

(f) States the name or functions of the persons or entities authorized to receive the medical information.

(g) States the specific uses and limitations on the use of the medical information by the persons or entities authorized to receive the medical information.

(h) States a specific date after which the provider of health care, health care service plan, pharmaceutical company, or contractor is no longer authorized to disclose the medical information.

(i) Advises the person signing the authorization of the right to receive a copy of the authorization.

---

**FIRST AMENDED CLASS ACTION COMPLAINT**

management and other administrative services to healthcare providers, including Keck Medicine of USC," and informing them, in part, of "**What happened?** [¶] On April 14, 2022, we learned that an unauthorized third party gained access to a Microsoft Office 365-hosted business email account. Upon discovery, we immediately began an investigation and engaged a leading security firm. [¶] In the course of the investigation, we learned that the unauthorized party was able to access the business email account at Conifer on January 20, 2022. This email account is separate from Conifer's internal network and systems, which were not affected by this incident. Based on the investigation and a detailed review that was performed and ultimately completed on August 3, 2022, it was determined that your personal information associated with the healthcare provider listed above was in the impacted business email account. We notified your healthcare provider of this incident on August 12, 2022 and since then have worked with them to provide you this notice." Conifer's notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," that Conifer submitted to the Attorney General of the State of California, exemplars of which are attached hereto as **Exhibit A**, and that Conifer sent to Plaintiff further stated in part, "**What information may have been involved?** [¶] …. The personal information in the impacted business email account may have included one or more of the following elements for you: [] information to identify you (such as full name, date of birth, and address); … [and] medical and/or treatment information (such as medical record number, provider name, diagnosis or symptom information, and prescription/medication)."

147.    At all times relevant to this action, including the period prior to and on January 20, 2022, Conifer negligently failed to establish appropriate procedures to ensure the confidentiality and protection from unauthorized use and disclosure of that information, as required by Cal. Civil Code section 56.26, and negligently failed to protect and preserve confidentiality of Plaintiff's and the Class Members' medical information in its possession against unauthorized disclosure and/or release, including, but not limited to, by failing to implement adequate and reasonable security controls and user authorization and authentication processes, by failing to implement multi-

factor authentication for business email accounts, by failing to limit the types of data permitted to be transferred, by failing to encrypt or de-identify Plaintiff's and the Class Members' "medical information," within the meaning of subdivision (i) of Cal. Civil Code section 56.05, by maintaining Plaintiff's and the Class Members' "medical information," within the meaning of subdivision (i) of Cal. Civil Code section 56.05, for longer than is reasonably necessary, by failing to have adequate privacy policies and procedures in place, as required by the CMIA, under subdivision (a) of Cal. Civil Code section 56.26 and subparagraph (E) of paragraph (2) of subdivision (e) of Cal. Civil Code section 56.36, and by failing to properly and adequately educate and train its employees.

148.    Conifer knew, or should have known, that its computer systems and data security practices were inadequate to safeguard Plaintiff's and the Class Members' "medical information" as defined by subdivision (i) of Cal. Civil Code section 56.05, maintained in a nonencrypted and a nonredacted format, on Conifer's computer network and in "a single email account," from an unauthorized access and exfiltration, theft, or disclosure, and that such risk of an unauthorized access and exfiltration, theft, or disclosure was more likely than not. Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect Plaintiff's and the Class Members' "medical information" as defined by subdivision (i) of Cal. Civil Code section 56.05, maintained on Conifer's computer network and in "a single email account," by *inter alia* failing to encrypt Plaintiff's and the Class Members' "medical information" as defined by subdivision (i) of Cal. Civil Code section 56.05, so in the event of an unauthorized access and exfiltration, theft, or disclosure of Plaintiff's and the Class Members' "medical information" as defined by subdivision (i) of Cal. Civil Code section 56.05, could not be read by an unauthorized third party.

149.    Had Conifer taken appropriate preventive actions, implemented multi-factor authentication for business email accounts, encrypted Plaintiff's and the Class Members' "medical information" as defined by subdivision (i) of Cal. Civil Code section 56.05, and fix the deficiencies in their policies and procedures, as required by

the CMIA, before January 20, 2022, Conifer could have prevented Plaintiff's and the Class Members' "medical information" as defined by subdivision (i) of Cal. Civil Code section 56.05, from being "accessed" by and disclosed to and actually viewed by "the unauthorized party" (who is not identified by Conifer and is currently unknown to Plaintiff) "on January 20, 2022."

150.    Because Conifer failed to take appropriate preventive actions, failed to implement multi-factor authentication for business email accounts, failed to encrypt Plaintiff's and the Class Members' "medical information" as defined by subdivision (i) of Cal. Civil Code section 56.05, and failed to fix the deficiencies in their policies and procedures, as required by the CMIA, before January 20, 2022, Plaintiff's and the Class Members' "medical information" as defined by subdivision (i) of Cal. Civil Code section 56.05, in "a single email account" was "accessed" by and disclosed to and actually viewed by "the unauthorized party" (who is not identified by Conifer and is currently unknown to Plaintiff) "on January 20, 2022," without first obtaining an authorization, constituting a disclosure and a release in violation of Cal. Civil Code section 56.26 of the CMIA.

151.    As a direct and proximate result of Conifer's above-described conduct in violation of Cal. Civil Code section 56.26 of the CMIA, Plaintiff and Class Members have and will continue to suffer damages as alleged herein, in amounts according to proof at trial.

152.    As a direct and proximate result of Conifer's above-described conduct in violation of Cal. Civil Code section 56.26 of the CMIA, Plaintiff and the Class are entitled to recover "compensatory damages, punitive damages not to exceed three thousand dollars ($3,000), attorney's fees not to exceed one thousand dollars ($1,000), and the costs of litigation" under Cal. Civil Code section 56.35.

153.    As a result of Conifer's above-described conduct in violation of Cal. Civil Code section 56.26 of the CMIA, Plaintiff, individually, and on behalf of the Class, seeks compensatory damages, punitive damages not to exceed three thousand dollars ($3,000), attorney's fees not to exceed one thousand dollars ($1,000), and the costs of litigation according to proof under Cal. Civil Code section 56.35.

154.     As a direct and proximate result of Conifer's above-described conduct in violation of Cal. Civil Code section 56.26 of the CMIA, Plaintiff and the Class are entitled to recover, "against any person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following: (1) ... nominal damages of one thousand dollars ($1,000).  In order to recover under this paragraph, it shall not be necessary that the plaintiff suffered or was threatened with actual damages. (2) The amount of actual damages, if any, sustained by the patient," under subdivision (b) of Cal. Civil Code section 56.36 of the CMIA.

155.     As a result of Conifer's above-described conduct in violation of Cal. Civil Code section 56.26 of the CMIA, Plaintiff, individually, and on behalf of the Class, seeks nominal damages of one thousand dollars ($1,000) for each violation under paragraph (1) of subdivision (b) of Cal. Civil Code section 56.36, and actual damages suffered, according to proof, for each violation paragraph (2) of subdivision (b) of under Cal. Civil Code section 56.36 from Defendant.

**Sixth Claim for Relief**
**Violation of the California Security Notification Law**
**Cal. Civil Code § 1798.82**
**(On Behalf of Plaintiff and the Class)**

156.     Plaintiff re-alleges and incorporates by reference the Paragraphs above as if fully set forth herein.

157.     Under subdivision (a) of Cal. Civil Code section 1798.82, "A person or business that conducts business in California, and that owns or licenses computerized data that includes personal information, shall disclose a breach of the security of the system following discovery or notification of the breach in the security of the data to a resident of California (1) whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person, or, (2) whose encrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person and the encryption key or security credential was, or is reasonably believed to have been, acquired by an unauthorized person and the person or business that owns or licenses the encrypted information has a reasonable belief that

the encryption key or security credential could render that personal information readable or usable. The disclosure shall be made in the most expedient time possible and without unreasonable delay, consistent with the legitimate needs of law enforcement, as provided in subdivision (c), or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system."

158.     Subdivision (h) of Cal. Civil Code section 1798.82 further provides, "personal information" means "an individual's first name or first initial and last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted:" "Medical information" and "Health insurance information."[24]

159.     Defendant conducts business in California, and owns or licenses computerized data which includes the personal information, within the meaning of subdivision (h) of Cal. Civil Code section 1798.82, of Plaintiff and the Class.

---

[24]"Personal information" as defined by subdivision (h) of Cal. Civil Code section 1798.82 means either of the following:
(1) An individual's first name or first initial and last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted:
(A) Social security number.
(B) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual.
(C) Account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account.
(D) Medical information.
(E) Health insurance information.
(F) Unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual. Unique biometric data does not include a physical or digital photograph, unless used or stored for facial recognition purposes.
(G) Information or data collected through the use or operation of an automated license plate recognition system, as defined in Section 1798.90.5.
(H) Genetic data.

160. Notwithstanding its duty to disclose the Data Breach in the most expedient time possible and without unreasonable delay, on or about September 30, 2022, Conifer caused a notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," to be submitted to the Attorney General of the State of California, exemplars of which are attached hereto as **Exhibit A**, and to be sent to "at least 120,000 California residents," stating in part, "We are writing to inform you of a data security incident that occurred at Conifer Revenue Cycle Solutions, LLC [] and may have affected your personal information. Conifer provides revenue cycle management and other administrative services to healthcare providers, including Keck Medicine of USC," and informing them, in part, of "**What happened?** [¶] On April 14, 2022, we learned that an unauthorized third party gained access to a Microsoft Office 365-hosted business email account. Upon discovery, we immediately began an investigation and engaged a leading security firm. [¶] In the course of the investigation, we learned that the unauthorized party was able to access the business email account at Conifer on January 20, 2022. This email account is separate from Conifer's internal network and systems, which were not affected by this incident. Based on the investigation and a detailed review that was performed and ultimately completed on August 3, 2022, it was determined that your personal information associated with the healthcare provider listed above was in the impacted business email account. We notified your healthcare provider of this incident on August 12, 2022 and since then have worked with them to provide you this notice."[25] Conifer's notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," that Conifer submitted to the Attorney General of the State of California, exemplars of which are attached hereto as **Exhibit A**, and that Conifer sent to the Plaintiff further stated in part, "**What**

---

[25] Additionally, by including an offer of "identity theft protection services" in Conifer's notice letter, exemplars of which are attached hereto as **Exhibit A**, "for not less than 12 months," pursuant to and as required by subparagraph (G) of paragraph (2) of subdivision (d) of Cal. Civil Code section 1798.82, Conifer has conceded that it "was the source of the breach," under subparagraph (G) of paragraph (2) of subdivision (d) of Cal. Civil Code section 1798.82.

**information may have been involved?** [¶] …. The personal information in the impacted business email account may have included one or more of the following elements for you: [] information to identify you (such as full name, date of birth, and address); [] medical and/or treatment information (such as medical record number, provider name, diagnosis or symptom information, and prescription/medication); [] health insurance information (such as payor name and subscriber/Medicare/Medicaid number); and [] billing and claims information." Thus, Conifer waited more than 169 days (or 5 months and 16 days) *after* April 14, 2022, when Conifer allegedly "learned" of the Data Breach on January 20, 2022, before *beginning* to inform Plaintiff and other Class of this Data Breach by mailing of its notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," that Conifer submitted to the Attorney General of the State of California, exemplars of which are attached hereto as **Exhibit A**, and that Conifer sent to "at least 120,000 California residents." Given the example of the Legislature finding that a delay of 21 days to be "late notice" under the statute, Conifer's delay of more than 169 days (or 5 months and 16 days) before *beginning* to mail "**Notice of Data Breach**" letter is presumptively unreasonable notice in violation of subdivision  (a) of Cal. Civil Code section 1798.82.[26]

161.    Additionally, Conifer's "**Notice of Data Breach**" letter failed to state whether notification was delayed as a result of a law enforcement investigation, in violation of subparagraph (D) of paragraph (2) of subdivision (d) of Cal. Civil Code section 1798.82.

162.    Conifer's delay of more than 169 days (or 5 months and 16 days) providing all of the information required by subdivision (d) of Cal. Civil Code section

---

[26] Similarly, Defendant's delay of more than 60 days before *beginning* to mail "Notice of Data breach" letter is presumptively unreasonable notice under federal regulations that require HIPAA covered entities "without unreasonable delay and in no case later than 60 calendar days after discovery of the breach" to "notify each individual whose unsecured protected health information has been, or is reasonably believed by the covered entity to have been, accessed, acquired, used, or disclosed as a result of" a data breach. 45 C.F.R. § 164.404.

1798.82 and in informing in the most expedient time possible and without reasonable delay as required by subdivision (a) of Cal. Civil Code section 1798.82, have prevented Plaintiff and the other members of other Class from taking steps in the most expedient time possible to protect their unencrypted personal information from unauthorized use and/or identify theft.  Specifically, after the Data Breach on January 20, 2022, *after* April 14, 2022 when Conifer allegedly "learned" of the Data Breach on January 20, 2022, and prior to the mailing of Conifer's "**Notice of Data Breach**" letter on September 30, 2022, Plaintiff's personal information was confirmed to be found on dark websites.

163.    As a direct and proximate result of Conifer's above-described conduct in violation of Cal. Civil Code section 1798.82, Plaintiff, individually, and on behalf of the Class, is entitled to seek recovery of their damages under subdivision (b) of Cal. Civil Code section 1798.84 and injunctive relief under subdivision (e) of Cal. Civil Code section 1798.84 from Defendant.

164.    Defendant has not corrected or publicly issued comprehensive corrective notices to Plaintiff and the Class, and has not corrected or enacted adequate privacy policies and procedures to protect and preserve confidentiality of personal information of Plaintiff and the Class in their possession.

165.    As a direct and proximate result of Conifer's above-described conduct in violation of Cal. Civil Code section 1798.82, Plaintiff and Class Members have and will continue to suffer damages as alleged herein, in amounts according to proof at trial.

166.    As a direct and proximate result of Conifer's above-described conduct in violation of Cal. Civil Code section 1798.82, Plaintiff, individually, and on behalf of the Class, seeks recovery of their damages under subdivision (b) of Cal. Civil Code section 1798.84 and injunctive relief under subdivision (e) of Cal. Civil Code section 1798.84 from Defendant.

/ / /

/ / /

/ / /

**FIRST AMENDED CLASS ACTION COMPLAINT**

### Seventh Claim for Relief
### Violation of the California Consumer Privacy Act of 2018
### Cal. Civil Code § 1798.81.5
### (On Behalf of Plaintiff and the Class)

167.     Plaintiff re-alleges and incorporates by reference the Paragraphs above as if fully set forth herein.

168.     California law provides, under paragraph (1) of subdivision (a) of Cal. Civil Code section 1798.81.5, "It is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose of this section is to encourage businesses that … maintain personal information about Californians to provide reasonable security for that information." California law further requires, under subdivision (b) of Cal. Civil Code section 1798.81.5, "[a] business that … maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

169.     Notwithstanding its duties, on or about September 30, 2022, Conifer caused a notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," to be submitted to the Attorney General of the State of California, exemplars of which are attached hereto as **Exhibit A**, and to be sent to "at least 120,000 California residents," stating in part, "We are writing to inform you of a data security incident that occurred at Conifer Revenue Cycle Solutions, LLC [] and may have affected your personal information. Conifer provides revenue cycle management and other administrative services to healthcare providers, including Keck Medicine of USC," and informing them, in part, of "**What happened?** [¶] On April 14, 2022, we learned that an unauthorized third party gained access to a Microsoft Office 365-hosted business email account. Upon discovery, we immediately began an investigation and engaged a leading security firm. [¶] In the course of the investigation, we learned that the unauthorized party was able to access the business email account at Conifer on January 20, 2022. This email account is separate from Conifer's internal network and systems, which were not affected by this

incident. Based on the investigation and a detailed review that was performed and ultimately completed on August 3, 2022, it was determined that your personal information associated with the healthcare provider listed above was in the impacted business email account. We notified your healthcare provider of this incident on August 12, 2022 and since then have worked with them to provide you this notice." Conifer's notice letter, dated September 30, 2022, entitled "**Notice of Data Breach**," signed "Dustin Kellner[,] Conifer Privacy Office," that Conifer submitted to the Attorney General of the State of California, exemplars of which are attached hereto as **Exhibit A**, and that Conifer sent to the Plaintiff further stated in part, "**What information may have been involved?** [¶] …. The personal information in the impacted business email account may have included one or more of the following elements for you: [] information to identify you (such as full name, date of birth, and address); [] medical and/or treatment information (such as medical record number, provider name, diagnosis or symptom information, and prescription/medication); [] health insurance information (such as payor name and subscriber/Medicare/Medicaid number); and [] billing and claims information."

170.     Additionally, by including an offer of "identity theft protection services" in Conifer's notice letter, exemplars of which are attached hereto as **Exhibit A**, "for not less than 12 months," pursuant to and as required by subparagraph (G) of paragraph (2) of subdivision (d) of Cal. Civil Code section 1798.82, Conifer has conceded that it "was the source of the breach," under subparagraph (G) of paragraph (2) of subdivision (d) of Cal. Civil Code section 1798.82.

171.     Based on the foregoing, Plaintiff alleges on information and belief that Plaintiff's and the Class Members' "personal information," as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5,[27] maintained in an nonencrypted and nonredacted format, as determined by

---

[27] "Personal information" as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5 means either of the following: "An individual's first name or first initial and the individual's last name in

Conifer's investigation, was subject to an unauthorized access and acquisition or exfiltration, theft, or disclosure.

172.    Based on the foregoing, Plaintiff alleges on information and belief that Plaintiff's and the Class Members' "personal information," as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section

_____

combination with any one or more of the following data elements, when either the name or the data elements are not encrypted or redacted:

(i) Social security number.

(ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual.

(iii) Account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account.

(iv) Medical information.

(v) Health insurance information.

(vi) Unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual. Unique biometric data does not include a physical or digital photograph, unless used or stored for facial recognition purposes.

(vii) Genetic data.

Furthermore, "medical and/or treatment information," "health insurance information" and "billing and claims information" described in the Conifer's notice letter that Plaintiff received all fall within the definition of "personal information," under paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5, and cannot be read to be excluded under subdivision (e) of Cal. Civil Code section 1798.81.5 because Conifer's notice letter, exemplars of which are attached hereto as **Exhibit A**, and Conifer's filings in this action, and Conifer's parent company's and owner's filings made pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, do not affirmatively state that Conifer was at all relevant times or is a provider of health care, health care service plan, or contractor regulated by the Confidentiality of Medical Information Act (Part 2.6 (commencing with Section 56) of Division 1) or a covered entity governed by the medical privacy and security rules issued by the federal Department of Health and Human Services, Parts 160 and 164 of Title 45 of the Code of Federal Regulations, established pursuant to the Health Insurance Portability and Availability Act of 1996 (HIPAA).

**FIRST AMENDED CLASS ACTION COMPLAINT**

1798.81.5, maintained in an nonencrypted and nonredacted format, as determined by Conifer's investigation, was subject to an unauthorized access and acquisition or exfiltration, theft, or disclosure, as a result of Defendant's violation of its duty to implement and maintain reasonable security procedures and practices appropriate to protect the PII of Plaintiff and the Class, including, but not limited to, by failing to implement adequate and reasonable security controls and user authorization and authentication processes, by failing to implement multi-factor authentication for business email accounts, by failing to limit the types of data permitted to be transferred, by failing to encrypt or de-identify "personal information," as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5, by maintaining "personal information," as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5, for longer than is reasonably necessary, by failing to have adequate privacy policies and procedures in place, as required by Cal. Civil Code section 1798.81.5, and by failing to properly and adequately educate and train its employees

173.    Defendant knew, or should have known, that its network computer systems and data security practices were inadequate to safeguard Plaintiff's and the Class Members' "personal information," as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5, maintained in a nonencrypted and a nonredacted format, on Conifer's computer network and in "a single email account," from an unauthorized access and exfiltration, theft, or disclosure, and that such risk of an unauthorized access and exfiltration, theft, or disclosure was more likely than not. Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect Plaintiff's and the Class Members' "personal information," as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5, maintained on Conifer's computer network and in "a single email account," by *inter alia* failing to encrypt Plaintiff's and the Class Members' "personal information," as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5, so in the event of an unauthorized access and

exfiltration, theft, or disclosure of Plaintiff's and the Class Members' "personal information," as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5, could not be read by an unauthorized third party.

174.    Had Conifer taken appropriate preventive actions, implemented multi-factor authentication for business email accounts, encrypted Plaintiff's and the Class Members' "personal information," as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5, and fix the deficiencies in their policies and procedures, as required by Cal. Civil Code section 1798.81.5, before January 20, 2022, Conifer could have prevented Plaintiff's and the Class Members' "personal information," as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5, from being "accessed" by and disclosed to and actually viewed by "the unauthorized party" (who is not identified by Conifer and is currently unknown to Plaintiff) "on January 20, 2022."

175.    Because Conifer failed to take appropriate preventive actions, failed to implement multi-factor authentication for business email accounts, failed to encrypt Plaintiff's and the Class Members' "personal information," as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5, and failed to fix the deficiencies in their policies and procedures, as required by Cal. Civil Code section 1798.81.5, before January 20, 2022, Plaintiff's and the Class Members' "personal information," as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5, in "a single email account" was "accessed" by and disclosed to and actually viewed by "the unauthorized party" (who is not identified by Conifer and is currently unknown to Plaintiff) "on January 20, 2022," in violation of Cal. Civil Code section 1798.81.5.

176.    As a direct and proximate result of Defendant's failure of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, and to protect Plaintiff's and the Class Members' "personal information," as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5, from unauthorized access or disclosure, Plaintiff's and the Class Members' nonencrypted and nonredacted

"personal information," as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5, was subject to an unauthorized access and acquisition or exfiltration, theft, or disclosure, Plaintiff and the Class have suffered damages as a result of the access and acquisition or exfiltration, theft, or disclosure their "personal information," as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5.

177.    As a direct and proximate result of Defendant's above-described conduct in violation of subdivision (b) of Cal. Civil Code section 1798.81.5, Plaintiff and the Class, whose "personal information," as defined by subparagraph (A) of paragraph (1) of subdivision (d) of Cal. Civil Code section 1798.81.5, was subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information, are entitled to institute a civil action under paragraph (1) of subdivision (a) of Cal. Civil Code section 1798.150.

178.    As a direct and proximate result of Defendant's above-described conduct in violation of subdivision (b) of Cal. Civil Code section 1798.81.5, Plaintiff, individually, and on behalf of the Class, seeks injunctive relief under paragraph (1) of subdivision (a) of Cal. Civil Code section 1798.150 from Defendant.

179.    As a direct and proximate result of Defendant's above-described conduct in violation of subdivision (b) of Cal. Civil Code section 1798.81.5, Plaintiff, individually, seeks actual pecuniary damages under paragraph (1) of subdivision (a) of Cal. Civil Code section 1798.150 from Defendant.

180.    On October 7, 2022, Plaintiff's counsel sent a Cal. Civil Code section 1798.150 notice letter to Defendant.  In its response letter dated November 4, 2022, Defendant did not actually cure the noticed violation and provide Plaintiff with an express written statement that the violations have been cured and that no further violations shall occur, pursuant to subdivision (b) of Cal. Civil Code section 1798.150, and instead wrongly asserted that, "there is no violation to be cured and statutory damages are not available." Therefore, as a direct and proximate result of Defendant's

**FIRST AMENDED CLASS ACTION COMPLAINT**

above-described conduct in violation of subdivision (b) of Cal. Civil Code section 1798.81.5, Plaintiff, individually, and on behalf of the Class, also seeks statutory damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident under paragraph (1) of subdivision (a) of Cal. Civil Code section 1798.150 from Defendant.

**Eighth Claim for Relief**
**Violation of the California Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200 *et seq*.--Unfair Business Practices**
**(On Behalf of Plaintiff and the Class)**

181.    Plaintiff re-alleges and incorporates by reference the Paragraphs above as if fully set forth herein.

182.    Defendant violated California Unfair Competition Law, Cal. Business & Professions Code sections 17200 *et seq*. ("UCL"), by engaging in unlawful, unfair, or fraudulent business acts and practices, and unfair, deceptive, untrue, or misleading advertising that constitute acts of "unfair competition" as defined in Cal. Business & Professions Code section 17200 with respect to the administrative services provided to Plaintiff and the Class Members.

183.    Defendant engaged in unlawful acts and practices with respect to the services by establishing the sub–standard security practices and procedures described herein; by soliciting and collecting Plaintiff and the Class Members' PII with knowledge the information would not be adequately protected; and by storing and maintaining Plaintiff's and the Class Members' PII in an unsecure electronic environment in violation of California's data breach statute, Cal. Civil Code section 1798.81.5, which require Defendant to take reasonable methods of safeguarding the PII of Plaintiff and the Class Members; and by failing to maintain the confidentiality of the medical information of Plaintiff and the Class, in violation of subdivision (a) of Cal. Civil Code section 56.26.

184.    In addition, Defendant engaged in unlawful acts and practices by failing to disclose the Data Breach in a timely and accurate manner, contrary to the duties imposed by Cal. Civil Code section 1798.82.

185.     As a direct and proximate result of Defendant's unlawful practices and acts, Plaintiff and the Class Members were injured and lost money or property, including but not limited to the price received by Defendant for the services, the loss of Plaintiff and the Class Members' legally protected interest in the confidentiality and privacy of their PII, nominal damages, and additional losses as described herein.

186.     Under Cal. Business & Professions Code section 17203, Plaintiff and the Class seek an order of this Court for equitable and/or injunctive relief in the form of requiring Defendant to correct its illegal conduct that is necessary and proper to prevent Defendant from repeating its illegal and wrongful practices as alleged above and protect and preserve confidentiality of personal information of Plaintiff and the Class in Defendant's possession that has already been subject to unauthorized access by least one unauthorized third party as a result of Defendant's aforementioned conduct. Under Cal. Business & Professions Code section 17203, Plaintiff and the Class further seek an order of this Court for equitable and/or injunctive relief in the form of requiring Defendant to publicly issue comprehensive corrective notices and to correct or enact adequate privacy policies and procedures to protect and preserve confidentiality of personal information of Plaintiff and the Class in its possession.

187.     Defendant knew or should have known Defendant's computer systems and data security practices were inadequate to safeguard Plaintiff and the Class Members' PII and that the risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above–named unlawful practices and acts were negligent, knowing, and willful, and/or wanton and reckless with respect to the rights of Plaintiff and the Class Members.

188.     Because of Defendant's aforementioned conduct, Plaintiff and the Class have no other adequate remedy of law in that absent injunctive relief from the Court and Defendant is likely to continue to injure Plaintiff and the Class.

189.     Plaintiff, on behalf of himself and the Class, seeks relief under the UCL, including, but not limited to, declaratory relief, attorney fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

**FIRST AMENDED CLASS ACTION COMPLAINT**

# **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and all Class Members, request that the Court grant judgment against Defendant as follows:

a. An order certifying the Class as defined herein, and appointing Plaintiff and his Counsel to represent the Class;

b. Injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

    i. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein,

    ii. requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws,

    iii. requiring Defendant to delete, destroy, and purge the PII of Plaintiff and Class members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members,

    iv. requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members,

    v. prohibiting Defendant from maintaining Plaintiff's and Class Members' PII on a cloud-based database,

    vi. requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering

**FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant to promptly correct any problems or issues detected by such third-party security auditors,

vii. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring,

viii. requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures,

ix. requiring Defendant to conduct regular database scanning and securing checks,

x. requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PII, as well as protecting the PII of Plaintiff and Class Members,

xi. requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach,

xii. requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting PII,

xiii. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated,

**FIRST AMENDED CLASS ACTION COMPLAINT**

xiv. requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their PII to third parties, as well as the steps affected individuals must take to protect themselves,

xv. requiring Defendant to design, maintain, and test its computer systems to ensure that PII in its possession is adequately secured and protected,

xvi. requiring Defendant disclose any future data disclosures in a timely and accurate manner; and

xvii. requiring Defendant to provide ongoing credit monitoring and identity theft repair services to Class Members.

c. An award of pecuniary, compensatory, statutory, and nominal damages as allowable by statute in an amount to be determined at trial;

d. An award of reasonable attorneys' fees, costs, and litigation expenses, as allowable by statute; and

e. Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

**SROURIAN LAW FIRM, PC**

DATED:  October 5, 2023        By: _____

Daniel Srourian, Esq.
Attorney for Plaintiff and the [Proposed] Class

**FIRST AMENDED CLASS ACTION COMPLAINT**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on October 5, 2023, a true and correct copy of the **FIRST AMENDED CLASS ACTION COMPLAINT FOR: 1. NEGLIGENCE; 2. NEGLIGENCE *PER SE*; 3. BREACH OF IMPLIED CONTRACT; 4. BREACH OF CONFIDENCE; 5. VIOLATION OF CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT; 6. VIOLATION OF CALIFORNIA SECURITY NOTIFICATION LAWS; 7. VIOLATION OF CALIFORNIA CONSUMER PRIVACY ACT OF 2018; AND 8. UNFAIR BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §§17200, ET SEQ.** was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's EM/ECF System.

<u>s/ *Daniel Srourian*</u>
Daniel Srourian, Esq.
daniel@slfla.com

**FIRST AMENDED CLASS ACTION COMPLAINT**