UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:23-cv-01987-AB-AGR | Date: | March 31, 2025 |
|---|---|---|---|

| Title: | Ryan Morales v. Conifer Revenue Cycle Solutions, LLC et al. |
|---|---|

Present: The Honorable **ANDRÉ BIROTTE JR., United States District Judge**

| Daniel Tamayo | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] ORDER <u>GRANTING</u> MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT [Dkt. No. 81]

Before the Court is a Motion to Dismiss Consolidated Amended Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ("Motion," Dkt. No. 81) filed by Defendants Conifer Health Solutions, LLC ("Conifer HS"), Conifer Value-Based Care, LLC ("Conifer VBC"), Conifer Revenue Cycle Solutions ("Conifer RCS"), and Tenet Health Corporation ("Tenet") (collectively "Defendants"). Plaintiffs Ryan Morales, Nicole Kolb, and William Tang ("Plaintiffs") filed an opposition and Defendants filed a reply. Plaintiffs also filed a Notice of Supplemental Authority, to which Defendants file a Response. *See* Dkt. Nos. 86, 87. The Court heard oral argument on December 6, 2024. The Motion is **<u>GRANTED</u>**.

//
//

## I. PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Plaintiffs' Consolidated Amended Class Action Complaint ("CACC," Dkt. No. 78) asserts claims arising out of a January 2022 data breach incident ("data breach") in which an unauthorized person accessed an email account on Conifer RCS's system and gained access to "the medical records belonging to hundreds of thousands of patients at several healthcare providers in California, exposing details like their names, dates of birth, medical treatment information, diagnoses and symptoms, their doctors, insurance information, and prescriptions." CACC ¶ 4. Plaintiffs allege that they learned of this data breach when they received a September 30, 2022 Notice of Data Breach from Conifer HS informing them that the data breach at Conifer RCS might have affected their personal information. CACC ¶¶ 15-17, Ex. A.[1]

Plaintiffs' CACC asserts the following causes of action against all Defendants: (1) Negligence; (2) Invasion of Privacy; (3) Unjust Enrichment; (4) Violation of the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56.101; (5) Violation of the California Consumer Records Act ("CCRA"), Cal. Bus. Code § 1798.80; (6) Violation of the California Consumer Privacy Act of 2018 ("CCPA"), Cal. Civil Code § 1798.81.5; and (7) Violation of the California Unfair Competition Law ("UCL"), Cal. Bus. Code § 17200, et seq. (Compl. ¶¶ 184-284.) Plaintiffs purport to bring these claims individually and on behalf of a putative class of "All persons residing in the United States whose Sensitive Information was compromised in the January 2022 Data Breach, including all those who received notices of the breach." CACC ¶ 180. Plaintiffs seek "actual, compensatory damages, nominal damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant." CACC ¶ 68.

Defendants now move to dismiss on various grounds. The Court will address them in turn.

---

[1] Plaintiffs filed several examples of the Notice of Data Breach and the CACC refers to them as different exhibits, but they were all filed together in a single Exhibit A.

## II.   LEGAL STANDARDS

### A. Motion to Dismiss Under Rule 12(b)(1) For Lack of Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a party may move to dismiss a complaint for lack of subject matter jurisdiction. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." *Id.* In a facial attack, the court "assume[s] [plaintiff's factual] allegations to be true and draw[s] all reasonable inferences in his favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). But, as with a Rule 12(b)(6) motion, courts do not accept the truth of any legal conclusions contained in the complaint. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

### B. Motion to Dismiss Under Rule 12(b)(6) For Failure to State a Claim

Federal Rule of Civil Procedure ("Rule") 8 requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face," allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S.

89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted).

### III. DISCUSSION

  **A. Plaintiffs Lack Standing to Sue Conifer HS, Conifer VBC, and Tenet, and Fail to State a Claim Against Them.**

The Defendants argue that Plaintiffs lack standing to sue, and fail to state a claim against, Conifer HS, Conifer VBC, and Tenet because they are legally distinct from Conifer RCS, the entity that Plaintiffs allege experienced the data breach, and Plaintiffs fail to allege any conduct of these other Defendants connected to the harms. Plaintiffs respond that all Defendants can be sued together because they all acted together, and directs the Court to about 30 paragraphs in the CACC that they argue plead "specific facts" supporting their allegations. *See* Opp'n 5:5-8 (referring to CAC ¶¶1-2, 26-28, 32, 52, 55, 125-126, 132, 139-141, 145-150, 168, 171, 189, 196, 200-202, 213, 225, 259-262, 275). Plaintiffs also point out that the Notice of Data Breach was sent by Conifer HS, from someone in the "Conifer Privacy Office." *See* CACC Ex. A. Plaintiffs also state that "Company policies" show that they act together. *See* Opp'n 5:21-6:7.

The CACC alleges the separate legal identities of the defendants. *See* CACC ¶ 2, 19-22. "When, as here, 'there are multiple defendants and multiple claims,' at least one plaintiff must have standing 'as to each defendant and each claim.'" *Rios v. Cnty. of Sacramento*, 562 F.Supp.3d 999, 1010 (E.D.Cal. 2021) (citations omitted). Thus, to establish standing as to each defendant, the plaintiff must allege facts showing that their alleged injury is "fairly traceable to the challenged conduct" of that defendant. The Court has reviewed the paragraphs Plaintiffs refer to and they are generic and do not allege any acts of any of the defendants that would establish that the alleged harms Plaintiffs suffered were "fairly traceable" to anyone but Conifer RCS—the entity whose system was breached. Furthermore, that the Notice was sent from Conifer HS does not tie that entity to the data breach itself. Finally, the Opposition cites CACC ¶ 31 as alleging a company policy that extends liability to the other defendants, but this policy appears only to require Conifer HS to report certain violations. It is not clear how this reporting policy makes the alleged harm caused by the data breach here "fairly traceable" to the non-Conifer RCS defendants. For the foregoing reasons, the CACC fails to plead facts showing that Plaintiffs' allege harm is fairly traceable to Conifer HS, Conifer VBC, or Tenet, so Plaintiffs lack standing to bring any claims against them.

In addition, given the CACC's treatment of all defendants in gross, its failure to allege any causative conduct by any defendant besides Conifer RCS, and that Plaintiffs do not invoke alter ego or agent theories of liability, the CACC also fails to state a claim against those other defendants. *See Tamraz v. Bakotic Pathology Associates, LLC*, 2022 WL 16985001, at *3 (S.D.Cal. 2022) ("Generally speaking, a complaint violates Rule 8(a)(2) when it groups corporate defendants together without specifying which allegations apply to which defendant.")

For the foregoing reasons, the CACC is **DISMISSED** insofar as it alleges claims against Conifer HS, Conifer VBC, and Tenet. This deficiency cannot be cured with amendment, so all claims against these entities are **dismissed without leave to amend**.

### B. Plaintiffs Lack Standing to Pursue Injunctive Relief

Plaintiffs seek "injunctive relief including improvements to Defendant's [sic] data security systems, future annual audits, and adequate credit monitoring services funded by Defendant [sic]." CACC ¶ 68. Defendants argue that Plaintiffs lack standing to seek this relief because their alleged harms, which occurred in the past, are not redressable by injunctive relief. Plaintiffs respond that their injunctive relief is directed to ongoing risk and future harms.

The "irreducible constitutional minimum" of standing consists of three elements: an injury-in-fact, causation, and redressability. *Spokeo v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Because Plaintiffs are the parties invoking federal jurisdiction, they "bear[] the burden of establishing these elements." *Lujan*, 504 U.S. at 560-61.

To have standing to pursue injunctive relief, Plaintiffs must "demonstrate that [they have] suffered or [are] threatened with a 'concrete and particularized' legal harm, coupled with a 'sufficient likelihood that [they] will again be wronged in a similar way.' " *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lujan*, 504 U.S. at 560, and *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). The latter requires plaintiffs to show a "real and immediate threat of repeated injury." *Id.* That threat of future injury cannot be merely "conjectural or hypothetical," it must be "certainly impending" to constitute an injury in fact sufficient to establish standing to pursue injunctive relief. *In re Zappos.com, Inc. (Zappos)*, 888 F.3d 1020, 1026 (9th Cir. 2018). In turn,

redressability requires a plaintiff to show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotation marks omitted).

      Both sides' briefing on whether Plaintiffs have standing to pursue injunctive relief is minimal. Defendants put only redressability in issue. Plaintiffs respond not by explaining how the relief they seek would redress their harms, but by claiming with little explanation that their future harms are imminent and substantial. Because it makes little sense to resolve Defendants' attack on the redressability of Plaintiffs' injury-in-fact if that injury itself is ill-defined or too speculative, the Court will first address whether Plaintiffs sufficiently allege an injury-in-fact.

      The Court is not satisfied that Plaintiffs have met their burden to plead an injury-in-fact sufficient to confer standing. In the Ninth Circuit, whether a data breach is likely to cause "real and immediate harm" rather than just "conjectural or hypothetical" harm turns on the kinds of data breached. *See, e.g., Greenstein v. Noblr Reciprocal Exchange*, 585 F.Supp.3d 1220, 1227 (N.D.Cal. 2022) (observing that in the parties' ostensibly-conflicting cases, the "plaintiffs' Article III standing turned on whether the degree of sensitive information presented an imminent and credible risk of harm," and that "[t]he Ninth Circuit identifies types of future harm in data breach cases based on the types of personal information compromised"). Reviewing the cases, the *Greenstein* court noted that courts have found a sufficiently immediate and real risk of identity theft where the data breach involved highly sensitive personal data like social security numbers, or information that "provides hackers a clear ability to commit fraud" like credit card numbers and expiration dates, and usernames and passwords. *Id.* at 1227. By contrast, less sensitive information, even driver's license numbers, is insufficient because whether it could be used to commit identity theft is speculative. Here, Plaintiffs state that they are at imminent risk of identity theft, but do not explain how the types of personal information that was compromised puts them at risk of identity theft. The Notices of Data Breach sent to the three named plaintiffs said that identification information (name, date of birth, address), treatment information, health insurance information, and billing and claims information were in the breached email account; social security numbers, driver's license numbers, and financial account information were not in the breached email account. *See* CACC ECF pp. 1385-1387 (three Notices identifying the kinds of information in the compromised email account, and stating that "[y]our Social Security number, driver's license number, and financial account information were not identified" in the account); *see also* CACC ¶ 4 (the information compromised was "names, dates of birth, medical treatment information, diagnoses and symptoms, their doctors,

insurance information, and prescriptions.") Thus, it does not appear that the types of data needed to commit identity theft were stolen. Accordingly, Plaintiffs have not alleged an imminent risk of the future harm of identity theft.

For at least the foregoing reasons, Plaintiffs have not pled facts that plausibly establish that they have standing to pursue injunctive relief. Any claims for injunctive relief are therefore **DISMISSED** for lack of standing.

### C. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim.

Defendants also move to dismiss each and every one of Plaintiffs' seven causes of action for failure to state a claim.

#### 1. Plaintiffs Fail to State a Claim for Negligence (First Cause of Action).

To assert a negligence claim under California law, Plaintiffs must allege (1) the existence of a legal duty; (2) breach of that duty; (3) causation; and (4) a cognizable injury. *Ladd v. County of San Mateo*, 12 Cal.4th 913, 917 (1996). Defendants argue that the negligence claim fails because the Plaintiffs have not pled actual damages caused by Defendants' conduct and instead have pled only theoretical harms, as follows: (1) "substantially increased risk of fraud, identity theft, and misuse"; (2) "lost time and effort" monitoring accounts to mitigate the risk of misuse of their data; (3) "feelings of anxiety, stress, fear, and frustration"; (4) "[d]amages to and diminution in the value of [their] Sensitive Information"; and (5) increase in spam text messages and phone calls. CACC ¶¶ 85, 87–89, 95, 97, 99–100, 105. Defendants also argue that Plaintiffs are barred from recovering these losses under California's economic loss rule.

##### a. Plaintiffs Fail to Plead Actual, Nonspeculative Damages.

"Under California law, appreciable, nonspeculative, present harm is an essential element of a negligence cause of action." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 962 (S.D. Cal. 2012). None of the harms Plaintiffs plead are sufficient.

First, regarding increased risk of fraud and identity theft, as discussed above, the types of data that Plaintiffs allege might have been accessed are not among the types of data that the Ninth Circuit recognizes as increasing these risks.

Second, lost time and effort to monitor accounts are "too speculative to constitute a cognizable injury." *Medoff v. Minka Lighting, LLC*, 2023 WL 4291973, at *9 (C.D.Cal., 2023); *see also Corona*, 2015 WL 3916744, at *4 ("[G]eneral allegations of lost time are too speculative to constitute cognizable injury."); *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 913 (N.D. Cal. 2009), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) ("Under California law, the breach of a duty causing only speculative harm or the threat of future harm does not normally suffice to create a cause of action for negligence.")

Third, Plaintiffs' general claims of emotional distress are too speculative, conclusory, and vague to support a claim for negligence. *See See Sallie Holly v. Alta Newport Hosp., Inc*, No. 219CV07496ODWMRWX, 2020 WL 6161457, at *3 (C.D. Cal. Oct. 21, 2020) (allegations that a plaintiff "experienced fear of identity theft, embarrassment, generalized anxiety. . . emotional pain and upset", among other allegations, were "too sparse and conclusory to support" her claims for damages."); *see also Sion v. SunRun, Inc.*, No. 16-CV-05834-JST, 2017 WL 952953, at *2 (N.D. Cal. Mar. 13, 2017) ("Although actual damages can include emotional distress, a plaintiff must support her claim for pain and suffering with something more than her own conclusory allegations, such as specific claims of genuine injury.") *see also R.C. v. Walgreen Co.*, 2024 WL 2263395, at *12 (C.D. Cal. May 9, 2024) ("Plaintiffs must do more than state they experienced emotional distress, they must allege 'facts pertaining to the nature and extent of [their] emotional or mental suffering.'").

Fourth, Plaintiffs allege that the data breach diminished the value of their personal data, but numerous courts in this circuit have held that such generalized allegations are insufficient to plead harm. *See, e.g., Pruchnicki v. Envision Healthcare Corporation*, 845 Fed. App'x. 613, 614–15 (9th Cir. 2021) ("Pruchnicki submits that she adequately alleged diminution of the value of her personal information. We disagree. Although the studies cited by Pruchnicki establish that personal information may have value in general, Pruchnicki failed to adequately allege that her personal information actually lost value. Several courts in this Circuit have found, and we agree, that the 'mere misappropriation of personal information' does not establish compensable damages."); *see also* Mot. 10:24-11:15 (citing numerous cases so holding). Plaintiffs cite three cases suggesting otherwise, but the Court finds none of them persuasive.

Fifth, Plaintiffs' alleged increase in spam texts and calls do not constitute compensable damages. *See Jackson v. Loews Hotels, Inc.*, 2019 WL 6721637, at *5 (C.D. Cal. July 24, 2019) (spam could not supply even Article III harm); *In re*

*Illuminate*, 2023 WL 8888839, at *3 (same). Nor does the CACC plausibly allege that the data breach *caused* the alleged increase in spam. For example, based on the Notices, it does not appear that the data breach included Plaintiffs' phone numbers.

Despite pleading numerous putative injuries, Plaintiffs fail to plead any actual, nonspeculative damages, so they fail to state a claim for negligence. There appear to be no other types of damages that Plaintiffs could plead, so amendment would be futile. This claim is therefore **DISMISSED without leave to amend.**

### b. Plaintiff's Claim for Negligence is Barred by the Economic Loss Rule.

Finally, the economic loss rule also bars Plaintiffs' claim for negligence. In actions for negligence under California law, "liability is limited to damages for physical injuries and recovery of economic loss is not allowed." *Kalitta Air, L.L.C. v. Central Texas Airborne Systems, Inc.*, 315 Fed. App'x. 603, 605 (9th Cir. 2008) (citing *Aas v. Superior Court,* 24 Cal.4th 627 (2000) (citing *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145, 151 (1965)). "In the absence of (1) personal injury, (2) physical damage to property, (3) a 'special relationship' existing between the parties, or (4) some other common law exception to the rule, recovery of purely economic loss is foreclosed." *Id.* (citing *See J'Aire Corp. v. Gregory,* 24 Cal.3d 799 (1979)). Plaintiffs fail to sufficiently allege any cognizable non-economic loss. For example, Plaintiffs argue that the time they spent monitoring the effects of the data breach are a non-economic loss, but California law holds otherwise. *See Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 536 (2022) ("We reject appellants' contention that their asserted lost-time damages are noneconomic losses and therefore exempt from the economic loss rule.") And as discussed above, none of Plaintiffs' alleged harms are sufficiently alleged. Plaintiffs suggest that are "common law duties" and "duties under federal law like HIPAA or the FTC ACT" trigger an exception to the economic loss rule. *See* Opp'n 9:2-18. But Plaintiffs fail to develop this argument: they do not explain exactly what common law exception applies; nor do they define and explain what specific duties under federal law arguably trigger an exception, nor do they provide any support under California law for recognizing such an exception. This Court will not fashion these arguments itself. As Plaintiffs allege only "purely economic loss" and have not shown that any exception to the economic loss rule applies, the Court finds that Plaintiffs' negligence claim is barred by the economic loss rule. This legal deficiency cannot be overcome by any amendment, so the negligence claims will be **DISMISSED without leave to amend**.

## 2. Plaintiffs Fail to State a Claim for Invasion of Privacy Claim (Second Cause of Action).

Plaintiffs allege that Defendants invaded their privacy because they recklessly and negligently failed to protect Plaintiffs' sensitive information because they used inadequate information security practices. *See* CACC ¶ 213. Defendants argue that this claim fails because it requires intentional conduct, and Plaintiffs accuse them of only negligent conduct.

"[A] plaintiff alleging an invasion of privacy in violation of the [California] constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by [the] defendant constituting a serious invasion of privacy." *Strawn v. Morris, Polich & Purdy, LLP*, 30 Cal. App. 5th 1087, 1098 (2019). A "serious invasion of privacy" is one in which "the intrusion is 'so serious … as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.' " *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citation omitted). Also, in data breach cases, courts tend to require that defendant's conduct be intentional, not merely negligent. *See Prutsman v. Nonstop Administration and Insurance Services, Inc.*, 2023 WL 5257696, at *1 (N.D.Cal., 2023) (so noting, based on analogous claim for intrusion on seclusion); *see also In re Accellion, Inc. Data Breach Litigation*, 713 F.Supp.3d 623, 646–47 (N.D.Cal., 2024) ("courts have declined to find 'highly offensive' conduct or an 'egregious breach of social norms' where only negligence is alleged with respect to a data breach, as opposed to intentional violations of privacy rights."); *In re Sequoia Bens.*, 2024 WL 1091195, at *6 (N.D. Cal. Feb. 22, 2024) (collecting cases to conclude that "the weight of authority makes clear that an actionable invasion of privacy claim requires more than negligent conduct alone"); *c.f. Ruiz v. Gap, Inc.*, 380 Fed.Appx. 689, 692–93 (9th Cir. 2010) (although "California has not explicitly required a finding of intentional conduct as a prerequisite for the cause of action to be asserted, California courts have yet to extend the cause of action to include accidental or negligent conduct.")

Here, Plaintiffs allege only negligent conduct. This is insufficient to pursue a claim for invasion of privacy. Plaintiffs contend that their allegation that the conduct was "reckless" creates an inference of intent, but their allegation of recklessness is conclusory. Finally, Plaintiffs attempt to recharacterize the CACC as actually alleging that Defendants intentionally invaded their privacy, directing the Court to CACC ¶¶ 2, 52, 55, 140, 144, 150, 170, 213, 215, 217, 226, 260, 279. As with Plaintiffs' prior string citations to numerous paragraphs of the CACC, the

Court has reviewed these paragraphs and finds that they simply fail to plead anything close to intentional conduct[2]: many of these paragraphs *expressly* allege that the conduct was negligent, others *implicitly* plead only negligence, while others include a boilerplate refence to recklessness without any facts. This falls short of the intentional conduct required to state a claim for invasion of privacy. Plaintiffs therefore fail to state a claim for invasion of privacy, so the motion is **GRANTED** as to this claim. This deficiency cannot be cured by amendment, so the claim is **DISMISSED without leave to amend**.

### 3. Plaintiffs Fail to State a Claim for Unjust Enrichment (Third Cause of Action).

The Court will construe Plaintiffs' stand-alone unjust enrichment claim as a quasi-contract claim. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'") (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)). "To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038-39 (9th Cir. 2016). Defendants argue that this claim fails because (1) Defendants did not receive a benefit from Plaintiffs, and (2) Plaintiffs fail to allege that they lack an adequate remedy at law.

The Court agrees. Plaintiffs do not allege any benefit they conferred on Defendants: Plaintiffs' medical provider contracted with the Defendants; the Plaintiffs themselves they did not pay Defendants anything or provide them their personal information. Plaintiffs therefore cannot have a claim for unjust enrichment against Defendants. *See Wall v. Wescom Cent. Credit Union*, 2024 WL 1158361, at *6 (C.D. Cal. Mar. 18, 2024) (dismissing an unjust enrichment claim when the plaintiff paid and provided their PII to the defendant's client—not to the defendant—and therefore did not enrich the defendant). Plaintiffs allege that "Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Sensitive Information," CACC ¶ 223, but Defendants' alleged cost-savings are not

---

[2] String-citing numerous paragraphs for the Court to review and mischaracterizing their allegations is a sure way to lose credibility and risks sanctions, as is mischaracterizing cases. *See, e.g.*, Opp'n 10:2-6 (mischaracterizing *Ruiz v. Gap, Inc.*, 380 F. App'x 689, 693 (9th Cir. 2010)).

a benefit conferred on them by Plaintiffs. Nor have Plaintiffs pled that they lack an adequate remedy at law as required to allege an equitable claim.

Because these deficiencies cannot be cured by amendment, Plaintiffs' claim for unjust enrichment is **DISMISSED without leave to amend**.

### 4. Plaintiffs Fail to State a Claim for Violation of the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56.101 (Fourth Cause of Action).

Plaintiffs assert a claim under CMIA § 56.101(a), which requires health care providers to maintain medical information "in a manner that preserves the confidentiality of the information contained therein" and creates a private right of action, enforced through § 56.36(b), for patients' whose health care provider 'negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information." Cal. Civ. Code § 56.101(a). Defendants argue that Plaintiffs fail to state claim because they did not plead facts establishing the unauthorized viewing of their medical information.[3]

California courts have held that plaintiffs asserting a claim for violation of CMIA § 56.101(a) must plausibly plead that an unauthorized person has *viewed* their medical information. *See Sutter Health v. Super. Ct.*, 227 Cal. App. 4th 1546, 1556 (2014) (sustaining demurrer where complaint did not plead the that an unauthorized person viewed the medical information); *Regents of the Univ. of Cal. v. Super. Ct.*, 2020 Cal. App. 4th 549, 570 (2020) (plaintiff did not plead that her medical information was viewed so she did not plead its confidentiality was breached, so the claim was subject to demurrer).

Here, Plaintiffs plead only a conclusory allegation that their "medical information was viewed by unauthorized individuals." CACC ¶ 236. Plaintiffs rely on the Notices, but these Notices say that after "a thorough investigation, it was not possible to conclusively determine whether personal information was actually accessed" and that no misuse of data had been reported. Compl. Ex. A. The CACC alleges that Morales's "personal information" was found on the dark web, SACC ¶ 249, but it does not allege what this information was and thus has not pled that it was medical information. And as before, the numerous CACC paragraphs that Plaintiffs direct the Court to (Opp'n 12:25) do not plausibly plead that Plaintiffs'

---

[3] Defendants also moved to dismiss a claim for violation of § 56.101(b)(1)(A), but Plaintiffs have clarified that they do not assert a claim under that section.

medical information was viewed. Plaintiffs rely on a seemingly more relaxed application of the CMIA in *J.M. v. Illuminate Education, Inc.*, 323 Cal.Rptr.3d 605, 613, (Cal.App. 2 Dist. 2024). The California Supreme Court has granted a petition for review of this case. In any event, *J.M.* did not expressly address the requirement that the medical information be "viewed," and Defendants otherwise persuasively distinguish the case in their reply.

The Court concludes that this deficiency cannot be cured by amendment, so the claim is **DISMISSED without leave to amend.**

### 5. Plaintiffs Fail to State a Claim for Violation of the California Consumer Records Act ("CCRA"), Cal. Bus. Code § 1798.80 (Fifth Cause of Action).

Plaintiffs also assert a claim for violation of the CCRA, which requires businesses to disclose data security breaches to persons whose personal information may have been acquired by an unauthorized person. Cal. Civ. Code § 1798.82(a). The CRA requires businesses to make these disclosures "in the most expedient time possible and without unreasonable delay." *Id.* Defendants move to dismiss this claim because Plaintiffs are not their customers and thus cannot bring a civil action. Defendants also argue that Plaintiffs have not pled incremental damages resulting from any delay in reporting.

The CCRA limits civil actions to "any customer injured by a violation of this title," Cal. Civ. Code § 1798.84(b), which is defined as "an individual who provides personal information to a business for the purpose of purchasing or leasing a product or obtaining a service from the business." Cal. Civ. Code § 1798.80(c). Simply stated, Plaintiffs are not Defendants' customers: they did not provide any information to Defendants, and they did not purchase or lease a product or obtain a service from any Defendants. Rather, Plaintiffs provided their information to their healthcare providers and received healthcare from those providers. Plaintiffs engaged in no transaction with Defendants. Plaintiffs therefore cannot pursue their claim under § 1798.82. Plaintiffs point to cases that entertain the notion that indirect customers may bring a claim, but for the reasons stated in the reply, those cases are either not persuasive because they did not address the entire definition of "customer," or they are distinguishable.

In addition, Plaintiffs have not pled incremental damages arising from the alleged delay in proving them notice of the breach. Accordingly, Plaintiffs fail to state any claim premised on an alleged delay in notice. *See Dugas v. Starwood*

*Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428, at *7 (S.D.Cal. 2016) (claim based on delayed notification ails "because Plaintiff has failed to trace any harm from Defendants' delayed notification or to demonstrate a nexus between the alleged harm flowing from the delayed notification and Defendants' actions")/

For these reasons, Plaintiffs fail to state a claim for violation of the CCRA. The Court concludes that these deficiencies cannot be cured by amendment, so the claim is **DISMISSED without leave to amend.**

### 6. Plaintiffs Fail to State a Claim for Violation of the California Consumer Privacy Act ("CCPA"), Cal. Bus. Code § 1798.80 (Sixth Cause of Action).

As relevant, the CCPA requires "[a] business that … maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civil Code § 1798.81.5.

As Defendants argue, this claim fails on two grounds. First, the CCPA expressly exempts personal health information governed by HIPAA. *See* Cal. Civ. Code § 1798.146(a) ("this title shall not apply to any of the following: …protected health information that is collected by a covered entity or business associates governed by [HIPAA]" or "a business associate of a covered entity"). The personal health information here is covered by HIPAA. *See* Cal. Civ. Code § 1798.146(b) (incorporating definitions from 45 C.F.R. § 160.103, which states that individually identifiable health information includes information related to an individual's healthcare "[t]hat identifies the individual" or "to which there is a reasonable basis to believe the information can be used to identify the individual."); *Mullinix v. US Fertility, LLC*, 2021 WL 4935975, at *5 (C.D.Cal., 2021) (dismissing claim under CCPA because the information—Social Security numbers and other nonmedical information was provided in relation to an individual's healthcare—was governed by HIPAA).

Second, the CCPA exempts "business associates" of covered entities, as defined by HIPAA, and Conifer RCS is a "business associate" of a covered entity because it handles protected health information in connection with billing and other administrative services for healthcare providers. *See* Cal. Civ. Code § 1798.146(a)(3) (CCRA does not apply to a "business associate of a covered entity" governed by HIPAA); C.F.R. § 160.103 (HIPAA defines a business associate as "a

person who: (i) On behalf of such covered entity or of an organized health care arrangement…creates, receives, maintains, or transmits protected health information for a function or activity regulated by this subchapter, including claims processing or administration, data analysis, processing or administration, utilization review, quality assurance, patient safety activities…benefit management, practice management, and repricing…); CACC ¶¶ 2, 19, 34 (Conifer RCS "offers revenue cycle management services" to healthcare providers). Similar allegations establish that the other Defendants are also exempt business associates of covered entities.

For the foregoing reasons, the CCRA does not apply to the personal information allegedly accessed here, or to any of the Defendants. Plaintiffs therefore fail to state a claim for violation of the CCRA. These deficiencies cannot be cured by amendment, so the claim is **<u>DISMISSED without leave to amend.</u>**

### 7. Plaintiffs Fail to State a Claim for Violation of the UCL (Seventh Cause of Action).

The unfair competition law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice[.]" Cal. Bus. & Prof. Code § 17200. Recovery under the UCL is "generally limited" to the equitable remedies of restitution and injunctive relief. *Safeway, Inc. v. Superior Ct.,* 238 Cal. App. 4th 1138, 1147 (2015). The "traditional principles" governing claims for equitable relief, including the requirement that the plaintiff establish that they lack an adequate remedy at law, apply to UCL claims. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

Plaintiffs lack standing to pursue a UCL claim. Section 17204 confers standing only on persons who "suffered injury in fact and has lost money or property as a result of the unfair competition." Bus. & Profs. Code § 17204. Here, Plaintiffs allege no loss of money or property, so they lack standing to bring any claim under the UCL. *In re Sony Gaming*, 903 F. Supp. 2d at 966 ("[T]he heightened risk of identity theft, time and money spent on mitigation of that risk, and property value in one's information, do not suffice as injury under the UCL.")

Plaintiffs have also failed to plead that he lacks an adequate remedy at law as required to seek any claims for equitable remedies. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (9th Cir. 2020) (affirming dismissal of UCL claim where plaintiff "fail[ed] to demonstrate that she lacks an adequate legal remedy"); *Gardiner v. Walmart Inc.*, 2021 WL 2520103, at *7 (N.D.Cal., 2021) (in

data breach case, dismissing UCL claim because the plaintiff did not plead there was no adequate remedy at law).

For at least these reasons, Plaintiffs fail to state any claim under the UCL. The Court further concludes that these deficiencies cannot be cured by amendment, so the claim is **DISMISSED without leave to amend.**

### D. Leave to Amend is Denied.

Leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a " 'district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.' " *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058 (9th Cir. 2011).

Here, the Court has dismissed all of Plaintiffs claims and finds that amending them would be futile. Some of Plaintiffs' claims fail because the facts they pled render the claims faulty, and the deficiencies cannot be cured with additional facts. For example, the negligence claim is barred by the economic loss rule; the invasion of privacy claim requires intentional invasion, while the entire gist of the complaint is that Defendants were negligent; and Plaintiffs simply cannot satisfy the statutory privacy claims. Other claims were dismissed because the facts were insufficient, but it appears that Plaintiffs have pled all of the facts that they can consistent with Rule 11. Furthermore, Plaintiffs have already amended their complaint in this Court (FAC Dkt. No. 26) yet is suffers all of the foregoing deficiencies. For these reasons, the Court concludes amendment would be futile, so leave to amend is denied.

### IV.   CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss Consolidated Amended Class Action Complaint is **GRANTED** in its entirety. Plaintiffs' Consolidated Amended Class Action Complaint is **DISMISSED with prejudice**.

Defendants are **ORDERED** to file a proposed Judgment within 5 days of this Order. Plaintiffs will have 5 days thereafter to object as to form.

**IT IS SO ORDERED**.